CHAPMAN COMPANY, INC., Appellant, v. SERVICE BROAD-CASTING CORPORATION, Respondent.

*No. 347. Argued June 2, 1971.—Decided June 25, 1971.*
(Also reported in 187 N. W. 2d 794.)

For the appellant there was a brief by *Cotton, Rose & Rose* and *Terry W. Rose,* all of Kenosha, and oral argument by *Terry W. Rose.*

For the respondent there was a brief by *Lepp & Lepp* of Kenosha, and oral argument by *Burton Lepp.*

BEILFUSS, J.   The two issues in this appeal are:

(1) Was the plaintiff-appellant acting as a "real estate broker" within the meaning of sec. 136.01 (2), Stats., when it attempted to sell the defendant-respondent's radio station?

(2) If it was, does the statutory requirement that an out-of-state real estate broker be required to have a Wisconsin real estate broker's or salesman's license as a prerequisite to a sale and action for a commission constitute an unlawful burden upon interstate commerce?

The appellant's first argument is that ch. 136, Stats., is inapplicable in this case because the contract in question was for the sale of a radio station and no real estate was involved.[2]  Nothing in the record indicates whether in fact there was any real estate owned by the radio station or any involved in the sale. A copy of the written contract was made a part of the complaint. It provides in part:

"1.  The property is described as follows: Radio Station WAXO-FM, Kenosha, Wisconsin."

Pertinent portions of ch. 136, Stats., provide as follows:

"136.11 **Limitation on actions for commissions.**  No person engaged in the business or acting in the capacity of a real estate broker or salesman within this state shall bring or maintain an action in the courts of this state for the collection of a commission or compensation for the performance of any act mentioned in this chapter without alleging and proving that he was a duly licensed broker or salesman at the time the alleged cause of action arose."

---

[2] The appellant relies almost entirely upon the case of *Schaller v. Litton Industries, Inc.* (E. D. Wis. 1969), 307 Fed. Supp. 126. We believe *Schaller* must be distinguished, not because there was no realty involved in the transaction, but because Schaller's activities were not within the definition of a real estate broker as set forth in sec. 136.01, Stats.

"136.01 **Definitions.** As used in this chapter: . . .

"(2) 'Real estate broker' means any person not excluded by sub. (6), who: . . .

"(d) For another and for commission, money or other thing of value, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of any business, its good will, inventory, fixtures or an interest therein; or

"(e) Is engaged wholly or in part in the business of selling business opportunities or good will of an existing business or is engaged wholly or in part in the business of buying and selling, exchanging or renting of any business, its good will, inventory, fixtures or an interest therein."

Previously, business opportunity brokers were regulated under the same chapter, but their activities were defined under a separate section. Sec. 136.19, Stats. 1953. Ch. 136 has been amended to include the activities of a business opportunity broker within the definition of a real estate broker, but the definition of his activities remained unchanged, as has the applicability of the chapter. Ch. 7, sec. 1, Laws of 1955. Contrary to the appellant's argument, the definition of a business opportunity broker has not been narrowed to require the inclusion of some real estate in the transaction in order to bring him within the applicability of ch. 136.

The property which formed the subject matter of the contract in question here is not limited to simply a federal license as appellant seems to argue. Certainly a radio station, as the concept would normally be understood, consists generally of an investment of capital, labor and management undertaken to provide a particular service to the public as a profit-making enterprise. And the sale of a "radio station," without further specification or limitation, would seem necessarily to imply the sale of the entire operation, including fixtures in the nature of transmitting equipment, antennas, etc., and a substantial amount of good will in the form of advertis-

ing contracts and a general audience. It may reasonably be inferred from the language of the contract that the appellant undertook to sell such an entire business, putting its activities squarely within the specific definition of a business opportunity broker, and now denominated as a real estate broker in sec. 136.01, Stats.

The complaint in this action fails to allege that the appellant was a duly licensed broker at the time the alleged cause of action arose. Under the explicit language of sec. 136.11, Stats., and the repeated decisions of this court and the federal courts, the attempted brokerage contract was void at its inception and appellant may not maintain an action for the collection of a commission pursuant to that agreement. *Kemmerer v. Roscher* (1960), 9 Wis. 2d 60, 100 N. W. 2d 314; *Levy v. Birnschein* (1932), 206 Wis. 486, 240 N. W. 140; *Payne v. Volkman* (1924), 183 Wis. 412, 198 N. W. 438; *Goldsmith v. Walker Mfg. Co.* (E. D. Wis. 1969), 295 Fed. Supp. 1037; *George Nangen & Co. v. Kenosha Auto Transport Corp.* (E. D. Wis. 1965), 238 Fed. Supp. 157; *Reed v. Kelly* (7th Cir. 1949), 177 Fed. 2d 473.

The appellant's second argument is that ch. 136, Stats., as applied to the conduct of its business, constitutes an unlawful burden on interstate commerce.

Initially, this same argument was raised and rejected in *Goldsmith v. Walker Mfg. Co., supra,* wherein the plaintiff had sued for a commission allegedly due him for working out a sale or a tax free reorganization of the defendant company. After concluding that for the purposes of the motion for summary judgment it had to be assumed that the plaintiff was acting as a real estate broker within the meaning of ch. 136, Judge REYNOLDS stated at page 1040:

"Having so found, the only remaining issue is the legal question of whether Chapter 136 of the Wisconsin Statutes is constitutional as applied to a nonresident broker

endeavoring to collect a fee for services rendered in Wisconsin.

"Plaintiff contends that Chapter 136 (requiring the licensing of all brokers acting in Wisconsin) is unconstitutional as a violation of the commerce clause as well as the 5th and 14th amendments. This theory is without merit. The regulation and licensing of nonresident as well as resident real estate brokers has been held constitutional in the face of due process and equal protection attacks in many prior cases. E.g., Business Brokers Assn. v. McCauley, 255 Wis. 5, 38 N. W. 2d 8 (1949) ; Payne v. Volkman, 183 Wis. 412, 198 N. W. 438 (1924). The statute has been upheld as a valid exercise of the state's police power designed to protect Wisconsin residents. Hilboldt v. Wisconsin Real Estate Brokers Board, 28 Wis. 2d 474, 137 N. W. 2d 482 (1965)."

A capsule summary of the state's power to regulate some aspects of interstate commerce was expressed by the United States Supreme Court in *Cities Service Co. v. Peerless Co.* (1950), 340 U. S. 179, 71 Sup. Ct. 215, 95 L. Ed. 190, wherein the court stated at pages 186, 187:

"The Commerce Clause gives to the Congress a power over interstate commerce which is both paramount and broad in scope. But due regard for state legislative functions has long required that this power be treated as not exclusive. *Cooley v. Port Wardens,* 12 How. 299 (1851). It is now well settled that a state may regulate matters of local concern over which federal authority has not been exercised, even though the regulation has some impact on interstate commerce. *Parker v. Brown,* 317 U. S. 341 (1943) ; *Milk Control Board v. Eisenberg Farm Products,* 306 U. S. 346 (1939) ; *South Carolina Highway Dept. v. Barnwell Bros.,* 303 U. S. 177 (1938). The only requirements consistently recognized have been that the regulation not discriminate against or place an embargo on interstate commerce, that it safeguard an obvious state interest, and that the local interest at stake outweigh whatever national interest there might be in the prevention of state restrictions. Nor should we lightly translate the quiescence of federal power into an affirma-

tion that the national interest lies in complete freedom from regulation. *South Carolina Highway Dept. v. Barnwell Bros., supra.* . . ."

And in *Head v. New Mexico Board* (1963), 374 U. S. 424, 83 Sup. Ct. 1759, 10 L. Ed. 2d 983, the court stated at pages 427–429:

"Without doubt, the appellants' radio station and newspaper are engaged in interstate commerce, and the injunction in this case has unquestionably imposed some restraint upon that commerce. But these facts alone do not add up to an unconstitutional burden on interstate commerce. As we said in *Huron Portland Cement Co. v. City of Detroit,* 362 U. S. 440, upholding the application of a Detroit smoke abatement ordinance to ships engaged in interstate and international commerce: 'In determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when "conferring upon Congress the regulation of commerce, . . . never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution." *Sherlock v. Alling,* 93 U. S. 99, 103; *Austin v. Tennessee,* 179 U. S. 343; *Louisville & Nashville R. Co. v. Kentucky,* 183 U. S. 503; *The Minnesota Rate Cases,* 230 U. S. 352; *Boston & Maine R. Co. v. Armburg,* 285 U. S. 234; *Collins v. American Buslines, Inc.,* 350 U. S. 528.' 362 U. S., at 443–444.

"Like the smoke abatement ordinance in the *Huron* case, the statute here involved is a measure directly addressed to protection of the public health, and the statute thus falls within the most traditional concept of what is compendiously known as the police power. The legitimacy of state legislation in this precise area has been expressly established. *Williamson v. Lee Optical Co.,* 348 U. S. 483. A state law may not be struck down on the mere showing that its administration affects interstate commerce in some way. 'State regulation, based on the police power, which does not discriminate

against interstate commerce or operate to disrupt its required uniformity, may constitutionally stand.' *Huron Portland Cement Co. v. City of Detroit, supra,* at 448.''

In *Union Brokerage Co. v. Jensen* (1944), 322 U. S. 202, 64 Sup. Ct. 967, 88 L. Ed. 1227, the court considered whether a Minnesota law requiring foreign corporations doing business within that state to procure a certificate of authority, and providing penalties for the failure to do so, constituted an unlawful burden on interstate commerce. In finding that it did not, the court stated at page 212:

"The Commerce Clause does not deprive Minnesota of the power to protect the special interest that has been brought into play by Union's localized pursuit of its share in the comprehensive process of foreign commerce. To deny the States the power to protect such special interests when Congress has not seen fit to exert its own legislative power would be to give an immunity to detached aspects of commerce unrelated to the objectives of the Commerce Clause. By its own force that Clause does not imply relief to those engaged in interstate or foreign commerce from the duty of paying an appropriate share for the maintenance of the various state governments. Nor does it preclude a State from giving needful protection to its citizens in the course of their contacts with businesses conducted by outsiders when the legislation by which this is accomplished is general in its scope, is not aimed at interstate or foreign commerce, and involves merely burdens incident to effective administration. And so we conclude that in denying Union the right to go to her courts because Union did not obtain a certificate to carry on its business as required by the Foreign Corporation Act, Minnesota offended neither federal legislation nor the Commerce Clause.''

In *Metropolitan Finance Corp. v. Matthews* (1953), 265 Wis. 275, 61 N. W. 2d 502, this court considered the applicability of sec. 218.04, Stats., to a nonresident company conducting a collection business by using residents of the state who were independent contractors to solicit

creditors within the state to assign their accounts to the plaintiff for collection. The court found that the section did not apply since the solicitors were independent contractors, but it did state, at page 278, the general rule which it considered applicable in cases involving interstate commerce as being:

". . . If plaintiff's business, although in interstate commerce, has incidents and requires activities within the state intimately related to local welfare, then those incidents and activities are subject to state regulation under the police power, unless congress has, by appropriate legislation, pre-empted the field with reference thereto." *See also: Meyers v. Matthews* (1955), 270 Wis. 453, 71 N. W. 2d 368.

That a legitimate local interest is at stake in the regulation of real estate and business opportunity brokers has been clearly established by this court:

"Ch. 136, Stats., Real Estate Brokers' Board, is a regulatory legislative enactment, under the police power, designed, primarily, to protect the interest of the general public. The history, as set out by the early cases, reveals that prior to the enactment of these regulatory statutes unscrupulous persons dealt in the buying and selling of real estate either for themselves or others in an unethical and fraudulent manner to such an extent that regulation, for the protection of the general public, became necessary." *Hilboldt v. Wisconsin Real Estate Brokers' Board* (1965), 28 Wis. 2d 474, 481, 137 N. W. 2d 482. *See also: Payne v. Volkman, supra.*

The appellant does not argue that its own business is subject to any federal control or regulation, but rather that the broadcasting businesses which it sells are subject to federal licenses. While this is true, the factor is not controlling here. Radio and television stations themselves consist of substantial amounts of equipment and good will, which is the actual subject matter of the sale, and these sales generally are made contingent upon F. C. C. approval of the assignment of the license. The

license therefore is of considerable significance to the completion of the sale, yet it is still incidental to the actual subject matter in which the appellant deals.

The appellant's argument is based primarily upon the assumptions that broadcasting stations are few in number, and sales of them are rare occurrences. The respondent, however, has asked the court to take judicial notice of the 1970 *Broadcasting Yearbook* published by Broadcasting Publications, Inc., which lists 189 commercial television and radio broadcasting licenses in the state of Wisconsin alone, any of which could be for sale if the price is right, indicating a substantial potential market for the services of a media broker within the state. Assuming the accuracy of appellant's argument that sales of broadcasting stations are rare (which seems questionable in view of the fact that according to the publication mentioned above the appellant does a sufficient volume of business to maintain offices in eight states), then it would not, as appellant contends, constitute an impossible burden to require local licensing since the number of states in which it would undertake to enter brokerage contracts would impliedly be few.

To adopt the appellant's argument and create an exception to sec. 136.01, Stats., because of the nature of the businesses in which it deals, would create an uncertain situation for other nonresident brokers with regard to whether they would have to obtain a license in Wisconsin before entering a brokerage contract within the state. What if a nonresident business opportunity broker specialized only in selling movie theaters or travel agencies or automobile dealerships? Or what if a nonresident real estate broker sold only tobacco farms or only estates with private lakes on them? Would all, some, or none of them be required to obtain a license pursuant to ch. 136, before they could engage in their business activities within this state?

Ch. 136, Stats., in no way discriminates against nonresident brokers. In some respects its requirements are more lenient toward them. A nonresident broker may obtain a license here without establishing any office within the state, and his application need not be accompanied by the affidavits of two citizens and real estate owners of this state certifying his trustworthiness and competency as is required of resident brokers. Sec. 136.12 (1), (2).

The legislature has declared it to be the policy of the state to protect the buyers and sellers of real estate or business opportunities, whether the brokers or salesmen are residents or nonresidents. Admittedly, the number of residents exposed to the evils of unregulated sales, and the number of transactions in which they might occur, are considerably fewer in the case of the type of broker in question than in the case of an ordinary intrastate brokerage business. However, to carve out an exception here for the appellant would do a disservice to the purpose and effect of ch. 136, Stats., by creating an uncertainty as to the scope of its application to nonresident brokers in general. We are of the opinion that ch. 136 does not impose an unreasonable burden on interstate commerce as it affects nonresident real estate brokers.

*By the Court.*—Order affirmed.