BADGER III LIMITED PARTNERSHIP, Plaintiff-Appellant,

v.

HOWARD, NEEDLES, TAMMEN & BERGENDOFF, Robert A. Teper, Michael, Best & Friedrich, Samuel M. Spiro and Samuel M. Spiro & Associates, Ltd., Defendants-Respondents.†

Court of Appeals

*Nos. 94–2531, 94–3074. Oral argument August 22, 1995.—Decided September 19, 1995.*

(Also reported in 539 N.W.2d 904.)

†Petition to review denied.

893

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James O. Huber, Brian W. McGrath,* and *Bryan B. House* of *Foley & Lardner,* of Milwaukee. There was oral argument by *Brian W. McGrath.*

On behalf of the defendants-respondents Howard Needles Tammen & Bergendoff, Samuel M. Spiro and Samuel M. Spiro & Associates, Ltd., the cause was submitted on the briefs of *Gerald J. Mayhew* of *Trebon & Mayhew* of Milwaukee, and *James S. Gordon* and *James A. Flesch* of *Gordon Glickman & Flesch* of Chicago. There was oral argument by *James S. Gordon.*

On behalf of the defendants-respondents Robert A. Teper and Michael, Best & Friedrich, the cause was submitted on the briefs of *Terry E. Johnson* and *Dan J. Gendreau* of *Peterson, Johnson & Murray, S.C.,* of Milwaukee. There was oral argument by *Dan J. Gendreau.*

Before Sullivan, Fine and Schudson, JJ.

FINE, J.   This is an action brought by Badger III Limited Partnership, the former owner of an office building in Milwaukee County, to recover rent that it claims was improperly withheld by Howard, Needles, Tammen & Bergendoff, a tenant in that building. The trial court granted summary judgment to the defendants, dismissing Badger III's complaint. Badger III

894

appeals from that judgment and from the trial court's order denying its motion for reconsideration. The main issue in this case is whether an out-of-state real estate broker can collect a commission for brokerage work performed in Wisconsin even though he or she is not licensed in this state by having that commission first pass through the hands of a licensed Wisconsin broker when that Wisconsin broker does nothing more than act as a conduit for those funds. The trial court decided that the out-of-state broker was entitled to the commission. We reverse.

## I.

Badger III owned One Park Plaza, an office building on the northwest side of Milwaukee. Howard, Needles is a tenant in the building. Trammell Crow Company was Badger III's rental agent and, in the late 1980s, began to negotiate with Howard, Needles for the renewal of Howard, Needles' space in the building. Samuel M. Spiro, a real estate broker licensed in Illinois but not Wisconsin, was Howard, Needles' broker for the negotiations. By letter to Spiro dated March 29, 1989, Trammell Crow recognized that Spiro was retained by Howard, Needles "to represent them in negotiations for long term space needs" in One Park Plaza, and agreed to pay to Spiro a commission if Howard, Needles signed a lease. Afraid that he could not collect a commission for brokerage work performed in Wisconsin, Spiro worked out an arrangement with the Michael, Best and Friedrich law firm for a Michael, Best and Friedrich partner, Robert A. Teper, a real estate broker licensed in Wisconsin, to collect the commission on Spiro's behalf and transmit it to Spiro.

The deal between Spiro and Teper was arranged by James S. Levin, a Michael, Best and Friedrich part-

ner who represented Spiro. It was reified in a letter from Spiro to Teper dated March 9, 1990, and in a letter from Trammell Crow to Teper dated March 22, 1990, both of which Teper signed and agreed to. Teper never met or talked to Spiro.

Spiro's March 9, 1990, letter to Teper recounted that Trammell Crow was to pay to Spiro a commission for Spiro's work on the Howard, Needles lease, and that, at Spiro's request, Trammell Crow would pay the commission to Teper instead of to Spiro because Teper was "a licensed real estate broker in the state of Wisconsin." Spiro and Teper agreed that Teper would remit to Spiro all of the money that he received from Trammell Crow. Trammell Crow's March 22, 1990, letter was Trammell Crow's agreement to pay Spiro's commission to Michael, Best and Friedrich.

Teper did not perform any brokerage services in connection with either the Spiro commission that he was to receive or in connection with the Howard, Needles/Trammell Crow negotiations. Rather, it is clear from the record, and is not disputed by the parties, that the arrangement was an attempt to circumvent the law that prohibits out-of-state real estate brokers from receiving commissions for brokerage work performed in Wisconsin unless those brokers are also licensed in Wisconsin.

On October 11, 1990, Badger III and Howard, Needles signed the lease for Howard, Needles' space in One Park Plaza. Under paragraph 21L of the lease, Badger III agreed to pay the Spiro commission to Teper. Badger III also agreed that if it did not pay Teper, Howard, Needles could pay him "and deduct the amount owed broker from monthly rent owed" to Badger III. When Badger III did not pay the commission, Howard, Needles did and deducted from its rent

what it paid to Teper. Ultimately, Spiro received $158,035.

One Park Plaza was mortgaged to Metropolitan Life Insurance Company as security for a $21 million note given to Metropolitan Life by Badger III. As additional security, Badger III gave to Metropolitan Life an assignment of the building's rents and leases. This assignment gave to Metropolitan Life "the sole and exclusive right . . . to collect the rents" from the building's tenants if Badger III defaulted on the note or mortgage. The assignment also provided that Metropolitan Life's remedies under it were "cumulative" and that Metropolitan Life's exercise of any of the assignment's remedies "shall not be construed as a waiver" of any other of Metropolitan Life's remedies "so long as any obligation" under the note, the mortgage, and the assignment of rents and leases "remains unsatisfied."

On March 6, 1991, Metropolitan Life began foreclosure proceedings on One Park Plaza. Badger III, Trammell Crow, and Metropolitan Life agreed to the foreclosure, and judgment was entered on December 5, 1991. Metropolitan Life purchased One Park Plaza at the sheriff's sale, and, on September 9, 1993, assigned to Badger III any claim that Metropolitan Life had to the money Howard, Needles paid to Spiro through Teper.

## II.

In addition to contending that the trial court correctly upheld the Howard, Needles to Teper to Spiro brokerage-commission transaction, the defendants argue, as an initial matter, that Badger III lacks the standing to maintain this lawsuit, and that it waived any right it had to seek recovery of the rent withheld by

Howard, Needles. We discuss these contentions in turn.

A. *Badger III's standing.*

The trial court held that Badger III had standing to bring this action. Although this is a legal issue that we decide *de novo, see Green Scapular Crusade, Inc. v. Town of Palmyra*, 118 Wis. 2d 135, 138, 345 N.W.2d 523, 525-526 (Ct. App. 1984), we agree.

The crux of the defendants' "standing" argument is that, in their view, Metropolitan Life's foreclosure on its mortgage and Metropolitan Life's purchase of the One Park Plaza property at the sheriff's sale extinguished Metropolitan Life's rights under Badger III's assignment to it of the building's rents and leases. Accordingly, the defendants argue, Metropolitan Life had no interest in the rental payments that were withheld by Howard, Needles to pay the Spiro commission, and, therefore, Metropolitan Life's assignment of its claim to that money was meaningless. We disagree.

Under Wisconsin law, a mortgage is a lien; it is security for, and incidental to, the mortgagor's debt to the mortgagee. *Glover v. Marine Bank of Beaver Dam*, 117 Wis. 2d 684, 691–692, 345 N.W.2d 449, 453 (1984). Badger III's assignment to Metropolitan Life of One Park Plaza's rents and leases was, by its terms, additional security for Badger III's $21 million note. Upon Badger III's default on its debt, Metropolitan Life had "the sole and exclusive right . . . to collect the rents" from the building's tenants. Howard, Needles withheld some of this rent, to which Metropolitan Life thus had an assertable claim (subject to Howard, Needles' defense that the withholding of the rent to pay the Spiro commission to Teper was authorized by the

898

lease). This assignment of rents and leases was also, by its terms, "cumulative" to Metropolitan Life's other remedies in case of Badger III's default, and, again under the assignment's express terms, survived "so long as any obligation" under the note, the mortgage, and the assignment of rents and leases "remains unsatisfied."

Metropolitan Life's foreclosure on the One Park Plaza property did not satisfy the entire debt evidenced by Badger III's note. Accordingly, Metropolitan Life's claim against Howard, Needles for the withheld rent, a claim that first arose in October of 1991, when Howard, Needles started to withhold rent in order to pay the Spiro commission, survived the foreclosure judgment and sheriff's sale, and was capable of being assigned by Metropolitan Life to Badger III. Badger III has standing by virtue of that assignment to maintain this action.[1]

B. *Waiver, issue preclusion, and judicial estoppel.*

---

[1] In an argument relegated to a footnote in their brief, Spiro and Howard, Needles assert that the assignment of the Howard, Needles rent-claim by Metropolitan Life to Badger III was without consideration. The argument, barely developed and improperly raised *in toto* in a footnote, *see United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review."), is without merit. The assignment was contracted-for as part of the agreement between Badger III, Trammell Crow, and Metropolitan Life that permitted, *inter alia*, Metropolitan Life's foreclosure on the One Park Plaza property by stipulation.

The defendants contend that Badger III's claim for the rent withheld by Howard, Needles is barred by what they term "principles of waiver and collateral estoppel" as well as judicial estoppel.[2] The defendants argue that Metropolitan Life's motion before the foreclosure trial court to appoint a receiver for One Park Plaza and to authorize the receiver to pay expenses including the commission to Teper, and Metropolitan Life's motion to discharge the receiver "with knowledge that the receiver's accounts showed the failure to collect the rent withheld by" Howard, Needles prevent Badger III, Metropolitan Life's assignee, from objecting to the commission. The trial court ruled against the defendants on these interrelated matters. Although our review of the trial court's decision on summary judgment is *de novo, see Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987), we agree that these contentions are not supported by the record.

First, it is undisputed that Badger III and Trammell Crow objected to Howard, Needles deducting from its One Park Plaza rent the money Howard, Needles paid to Teper for the Spiro commission, and that this objection was conveyed to the building's receiver. Second, although the order appointing the receiver

---

[2] The Wisconsin Supreme Court has decided to jettison the terms *res judicata* and collateral estoppel: "The term claim preclusion replaces res judicata; the term issue preclusion replaces collateral estoppel." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723, 727 (1995). Judicial estoppel prohibits a party from asserting in litigation a position that is contrary to, and inconsistent with, a position asserted previously in the litigation by that party. *Godfrey Co. v. Lopardo*, 164 Wis. 2d 352, 363, 474 N.W.2d 786, 790 (Ct. App. 1991).

authorized him to "pay from revenues derived from the real estate" expenses listed on an exhibit to the order, including $150,000 denominated as "third party commission" (upper casing omitted) under the "outstanding tenant related payable" (upper casing omitted) attributable to Howard, Needles, the receiver was put on notice that this "payable" was in dispute. Third, the receiver submitted an affidavit to the trial court that he "never approved" payment of the commission, and that he did not "approve of the rental offset taken to pay the aforesaid commission." Fourth, the agreement between Badger III, Trammell Crow, and Metropolitan Life permitting the judgment of foreclosure to be entered by stipulation specifically recognized that Trammell Crow "dispute[d] the legality and enforceability" of Trammell Crow's March 22, 1990, agreement to pay the Spiro commission to Michael, Best and Friedrich. Finally, neither the order approving the receiver's final accounts and discharging the receiver nor those final accounts mentions the payment of the commission to anyone. Under these circumstances, the trial court did not err in refusing to grant summary judgment to the defendants on the waiver/issue-preclusion/judicial-estoppel theories.

C. *Right of out-of-state broker to commission.*

The right of an out-of-state broker to a commission for brokerage work performed in Wisconsin even though he or she is not licensed in this state is controlled by two statutes: § 452.03, STATS., and § 452.19, STATS. They provide:

**452.03 Brokers and salespersons licensed.** No person may engage in or follow the

business or occupation of, or advertise or hold himself or herself out as, or act temporarily or otherwise as a broker or salesperson without a license. Licenses shall be granted only to persons who are competent to transact such businesses in a manner which safeguards the interests of the public, and only after satisfactory proof of the person's competence has been presented to the department.

**452.19 Fee-splitting**. No licensed broker may pay a fee or a commission or any part thereof for performing any act specified in this chapter or as compensation for a referral or as a finder's fee to any person who is not licensed or registered under this chapter or who is not regularly and lawfully engaged in the real estate brokerage business in another state, a territory or possession of the United States or a foreign country.

The application of these statutes to the undisputed facts in this case is a legal matter that we decide *de novo. See Bufkin v. Milwaukee Bd. of School Directors,* 179 Wis. 2d 228, 233, 507 N.W.2d 571, 573-574 (Ct. App. 1993).

The parties do not dispute that in negotiating the lease between Howard, Needles and Badger III, Spiro was acting as a broker in Wisconsin in violation of § 452.03.[3] The defendants contend, however, that pay-

---

[3] Spiro could have avoided this by complying with § 452.11, STATS., which provides:

**Nonresident applicants and licensees. (1)** A nonresident may become a broker, salesperson or time-share salesperson by conforming to all the provisions of this chapter.

**(3)\*** Every nonresident applicant, and every resident licensee who becomes a nonresident, shall file with the department an irrevocable consent that actions may be commenced against the applicant or licensee in the proper court of any county of the state

ment of the commission to Spiro by Howard, Needles through Teper and Michael, Best and Friedrich was authorized by § 452.19. We disagree.

Section 452.03, STATS., prohibits any person not licensed as a real estate broker in Wisconsin from performing real estate brokerage services in this state. An agreement to pay a real estate brokerage commission to a person who is not a licensed real estate broker is not an "enforceable obligation," *Levy v. Birnschein*, 206 Wis. 486, 489, 240 N.W. 140, 141 (1932), and is "void at its inception," *Chapman Co. v. Service Broadcasting Corp.*, 52 Wis. 2d 32, 38, 187 N.W.2d 794, 797 (1971) (citing cases); *Kemmerer v. Roscher*, 9 Wis. 2d 60, 64, 100 N.W.2d 314, 317 (1960).[4] Thus, by virtue of § 452.03, STATS., Spiro was not legally entitled to a

in which a cause of action arises or in which the plaintiff resides, by the service of any process or pleading authorized by the laws of this state on the department or any duly authorized employe. The consent shall stipulate and agree that such service is valid and binding as due service upon the applicant or licensee in all courts in this state. The consent shall be duly acknowledged and, if made by a corporation, shall be authenticated by the corporate seal.

(4) Any process or pleading under this section shall be served in duplicate upon the department or its duly authorized employe. One copy shall be filed with the department and the other immediately forwarded by certified mail to the nonresident licensee against whom the process or pleading is directed at the last address provided to the department by the nonresident licensee. No default in any such proceeding or action may be taken unless it appears by affidavit of the secretary or any duly authorized employe that a copy of the process or pleading was mailed to the nonresident licensee as required in this subsection. No judgment by default may be taken in any action or proceeding within 20 days after the date of mailing the process or pleading to the nonresident licensee.

* There is no § 452.11(2), STATS.

[4] Section 452.20, STATS., augments the enforcement of § 452.03 by placing the burden of pleading and proving compliance with the licensure requirement on a broker suing for his or

commission for his brokerage work in connection with the Badger III/Howard, Needles lease, despite any agreement by either Badger III or Trammell Crow on Badger III's behalf to pay that commission. Neither § 452.19, STATS., nor the lease between Badger III and Howard, Needles, alters this result.

■

Section 452.19, STATS., permits a real estate broker who is licensed in Wisconsin to pay to someone who is not licensed in Wisconsin but who is "regularly and lawfully engaged in the real estate brokerage business in another state" "a fee or a commission or any part thereof" in return for that person's performance of real estate brokerage services in Wisconsin. It also permits a real estate broker who is licensed in Wisconsin to pay to that person "compensation for a referral or as a finder's fee." The statute thus permits co-brokerage between a broker licensed by Wisconsin and a broker licensed by another state.

Teper's remittance to Spiro of the money he received from Howard, Needles does not satisfy either element of § 452.19, STATS. First, Teper performed no real estate brokerage services in connection with the Badger III/Howard, Needles lease. He neither supervised Spiro's work nor worked with him, in any degree, as a co-broker; Teper's only role was as a conduit for the

---

her commission. *Levy v. Birnschein*, 206 Wis. 486, 489, 240 N.W. 140, 141 (1932). Section 452.20 provides:

**Limitation on actions for commissions.** No person engaged in the business or acting in the capacity of a broker, salesperson or time-share salesperson within this state may bring or maintain an action in the courts of this state for the collection of a commission or compensation for the performance of any act mentioned in this chapter without alleging and proving that he or she was a duly licensed broker, salesperson or registered time-share salesperson at the time the alleged cause of action arose.

money. Moreover, Spiro performed no real estate brokerage services for Teper in connection with the Badger III/Howard, Needles lease. Accordingly, the money that Teper remitted to Spiro was neither a "fee" nor a "commission," both of which denote payment in return for something of value. Second, the money remitted to Spiro by Teper was not compensation to Spiro "for a referral or as a finder's fee." To permit § 452.19 to be used to circumvent the clear and long-established mandate of § 452.03, STATS., under these circumstances would permit licensed Wisconsin brokers to " 'sublet' " their licenses, *see Previews, Inc. v. Murff*, 502 So. 2d 1317, 1318 (Fla. Dist. Ct. App. 1987), without any attendant responsibilities. This would make § 452.03 a dead letter.

The Badger III/Howard, Needles lease also does not permit Spiro to retain the rent withheld by Howard, Needles and transmitted to him.[5] The lease merely entitles Howard, Needles to pay to Teper "the amount owed broker." As we have seen, an agreement to pay a real estate brokerage commission to a person who is not a licensed real estate broker is "void at its inception." *Chapman Co.*, 52 Wis. 2d at 38, 187 N.W.2d at 797. Accordingly, no commission was "owed" to Spiro. By the same token, no commission was "owed" to Teper, the only person to whom the lease authorized payment for brokerage services. Teper performed no brokerage services and he had no right to retain any of the money. Further, as we have already discussed, Wisconsin law does not permit him to collect Spiro's commission as Spiro's surrogate. Howard, Needles' payments to Teper were not authorized.

---

[5] Spiro agreed to "indemnify and hold harmless" Howard, Needles for "any and all claims regarding the commission."

*By the Court.*—Judgment and order reversed.[6]

[6]Badger III also asserts that the trial court erred in not concluding that the agreement to pay the commission was void under the statute of frauds, § 240.10(2), STATS., and that in refusing to hear its alternative argument that if the commission agreement was valid only some $98,000 was owed. We do not discuss these issues in light of our determination that the agreement to pay the commission was void. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).