SHIRLEY S. ABRAHAMSON, J.
¶ 31. (dissenting). I agree with the result reached by the court of appeals. The majority opinion asserts that Abbey Springs' policy violates "well-established foreclosure law."[1] Asserting that something is "well-established" does not mean it is, in fact, "well-established." The majority opinion fails to prove its assertion.
¶ 32. Let's look at the facts. Abbey Springs, a condominium association, adopted a policy barring an owner of a condominium unit from using certain rec *93 reational facilities if "regular monthly or special assessment [s]" are more than 90 days past due, unless the unpaid assessments (including a prior owners' unpaid assessments) are paid.
¶ 33. Abbey Springs' policy provides in relevant part:
If any regular monthly or special assessment against any Unit is delinquent for more than ninety (90) days past its due date, the owner or owners of that Unit, and any subsequent owners, shall automatically and without notice be suspended from any use or occupation of the Yacht Club, Clubhouse Grille, Pool Café, fitness facilities, golf facilities, and boat launching facilities, until such time as assessments are paid in full.
Majority op., ¶ 4.
¶ 34. In the instant case, the previous owners of the two condominium units at issue were delinquent in paying their mortgage and their assessments. Wal-worth State Bank, the mortgagee, brought a foreclosure action naming the unit owners and Abbey Springs as defendants. Abbey Springs was named as a defendant because Abbey Springs had a lien for unpaid assessments secured against the units pursuant to Wis. Stat. § 703.165(3).[2]
*94 ¶ 35. The circuit court entered a judgment in the foreclosure action providing that the owners of the foreclosed units and Abbey Springs and all persons claiming under them were "forever barred and foreclosed of all right, title, interest, lien or equity of redemption" in and to the units. Walworth State Bank bought the units at issue in a sheriffs sale.
¶ 36. The question presented is whether Abbey Springs' policy barring an owner of a condominium unit from using certain recreational facilities if "regular monthly or special assessment^]" are more than 90 days past due, unless the unpaid assessments (including a prior owners' delinquent assessments) are paid, may be enforced against the purchaser of the condominium units following a foreclosure sale. For ease of discussion, I will refer to this policy restricting access to the recreational facilities as "Abbey Springs' recreational use policy."
¶ 37. The majority opinion asserts that Abbey Springs' recreational use policy violates Wisconsin law in two respects:
1. Abbey Springs' recreational use policy "imper-missibly revives a lien on the condominium units that was eliminated by the foreclosure action." See majority op., ¶ 1.
2. Abbey Springs' recreational use policy violates the circuit court's order for judgment on *95 foreclosure. The judgment eliminated "all right, title, interest, lien or equity of redemption" of Abbey Springs in and to the foreclosed units. See majority op., ¶¶ 2, 30.
¶ 38. Everyone agrees that the statutory lien against the units for the unpaid assessments was extinguished in the foreclosure action.[3] Everyone agrees that a purchaser of the units at issue is not personally liable for prior unpaid assessments.[4]
¶ 39. Although the statutory lien is gone and the new owners of the units are not personally liable for prior unpaid assessments, the majority opinion states (in conclusory fashion and without citation to authority) that Abbey Springs' recreational use policy "imper-missibly revives a lien on the condominium units that was eliminated by the foreclosure action,"[5] "improperly tethers the unpaid assessments to the unit itself,"[6] and asserts "a right against the property."[7]
¶ 40. I disagree with the majority opinion. This "revived," "tethered," resurrected lien "haunting a particular unit" is a figment of the majority opinion's imagination not traceable to any statute or common law principle. The statutory lien is gone; no lien exists to haunt, or to be revived, tethered, or resurrected.
f 41. Nevertheless, the majority opinion concludes that Abbey Springs' recreational use policy amounts to Abbey Springs' claiming a "right, title, interest, lien or equity of redemption in and to" the foreclosed units that was barred by the judgment of *96 foreclosure. The majority opinion does not explain what "right, title, interest, lien or equity of redemption in and to" the foreclosed units Abbey Springs is claiming. The majority opinion cannot explain itself because Abbey Springs is not claiming a "right, title, interest, lien or equity of redemption in and to" the foreclosed units.
¶ 42. With respect to the judgment of foreclosure, Abbey Springs does not claim a lien on the foreclosed units. Abbey Springs' recreational use policy does not in any way revive the extinguished lien.
¶ 43. Abbey Springs does not claim an equity of redemption in and to the foreclosed units.
¶ 44. Abbey Springs is not using its recreational use policy to claim a right, title, or interest in and to the foreclosed units. Abbey Springs is, as several briefs point out, using access to the recreational facilities, which are not common elements of the condominium at issue, as "leverage to compel satisfaction of all [assessments in] arrears."[8]
¶ 45. Restrictions on the use of the unit itself are permissible under Wisconsin law.[9] If use of the unit may be restricted, surely a restriction on the use of the association's recreational facilities is permissible, even if used as leverage to compel the payment of delinquent assessments.
¶ 46. In Part II, below, I conclude that Abbey Springs' recreational use policy does not affect the marketable title to the units.
*97 ¶ 47. In sum, the majority opinion contravenes basic principles of real property law, foreclosure law, and condominium law.
¶ 48. For the reasons set forth, I would affirm the court of appeals and hold that Abbey Springs' recreational use policy is enforceable.
HH
¶ 49. Condominium associations expenses are funded largely through "assessments," which an association may levy among unit owners. See Wis. Stat. § 703.16(2)(a).
¶ 50. The significant problem posed for condominium associations by unpaid assessments is the issue underlying the instant case.
¶ 51. The problem, simply stated, is that unless a condominium association can recover delinquent assessments from the delinquent unit owner (or, under a policy such as Abbey Springs has adopted, from a subsequent owner), the cost of the delinquent assessments will be passed on to the owners of other condominium units. As a Report of the Joint Editorial Board for Uniform Real Property Acts explained:
If some owners do not pay their proportionate share of common expenses, the association will be forced to shift the burden of delinquent assessments to the remaining unit owners through increased assessments or reduced services and maintenance, potentially threatening property values within the community.[10]
¶ 52. To enable a condominium association to collect unpaid assessments, Wis. Stat. § 703.165(3) *98 creates a lien on a unit for certain unpaid assessments.[11] This statutory lien was extinguished in the foreclosure action.[12] Everybody agrees the statutory lien is extinguished. No ifs, ands, or buts.
f 53. To further address the problem of unpaid assessments and the limitations of the statutory lien for unpaid assessments, Abbey Springs adopted its recreational use policy, restricting access to Abbey Springs' recreational facilities as leverage to compel a unit owner to pay a prior owner's delinquent assessments. Everyone, including Walworth State Bank, was notified of Abbey Springs' recreational use policy.
f 54. The parties agree, and the majority opinion acknowledges, that under Abbey Springs' recreational use policy, an owner of a unit "ha[s] no legal obligation to pay the former owners' outstanding assessments after foreclosure . . . ."[13] In other words, Walworth State Bank (and any person purchasing the units from the Bank) is not liable for the prior owner's unpaid assessments.[14] Refusing to pay the prior owner's de *99 linquent assessments results only in the new owner's exclusion from Abbey Springs' recreational facilities.
¶ 55. Nevertheless, the majority opinion concludes that Abbey Springs' recreational use policy "impermissibly revives a lien on the condominium units that was eliminated by the foreclosure action."[15]
¶ 56. No lien was revived under Abbey Springs' recreational use policy. The "well-established law" is that a lien cannot exist independent of a debt.[16] A lien secures payments for debts due the lienholder and facilitates the satisfaction of that obligation.
¶ 57. The majority opinion acknowledges this "well-established" law, but does not recognize its importance in the instant case.[17]
¶ 58. In the instant case, Walworth State Bank and the new owners of the foreclosed units are not indebted to Abbey Springs for the past owners' unpaid *100 assessments. The new owners are not personally liable to Abbey Springs for any past unpaid assessments. The prior owners of the units remain indebted to Abbey Springs for unpaid assessments they incurred while owners.[18] Stated simply, the foreclosure action severed the debt of the prior owners for unpaid assessments from the collateral; the debt remained that of the prior owners and the collateral was gone.
f 59. The majority opinion invents a "straw lien" and then blows it down, concluding that Abbey Springs' recreational use policy violates "well-established foreclosure law."[19] The majority opinion does not explain what "well-established foreclosure law" Abbey Springs' recreational use policy violates.
f 60. I turn now to the second rationale of the majority opinion: Abbey Springs' recreational use policy violates the circuit court's order for judgment on foreclosure. The judgment eliminated "all right, title, interest, lien or equity of redemption" of Abbey Springs in and to the foreclosed units. See majority op., ¶¶ 2, 30.
¶ 61. I agree with the majority opinion that the five elements of the foreclosure judgment — right, title, interest, lien, and equity of redemption — should be analyzed.[20] I have already explained that Abbey Springs does not claim, and is not entitled to claim, a lien in and to the foreclosed units. Nor does Abbey Springs claim an equity of redemption in and to the *101 foreclosed units. So what right, title, or interest does Abbey Springs claim in and to the foreclosed units?
f 62. The answer is that Abbey Springs does not claim any right, title, or interest in and to the foreclosed units. Abbey Springs' recreational use policy restricts the unit owners' access to certain recreational facilities, as several briefs claim, as leverage to compel satisfaction of all assessments in arrears.
¶ 63. If an owner wants to live in a condominium unit at Abbey Springs without using the recreational facilities, the owner need not pay any prior owner's delinquent assessments.[21]
¶ 64. A restriction on the use of recreational facilities used as leverage to compel satisfaction of all assessments in arrears is not, as the majority opinion claims, a right, title, or interest by Abbey Springs in and to the foreclosed units.[22] This court has allowed condominium associations to restrain an owner's use of a unit. If a condominium association can restrict an owner's use of a unit, it surely can restrict the use of recreational facilities.
¶ 65. In Apple Valley Gardens Ass'n, Inc. v. MacHutta, 2009 WI 28, ¶ 24, 316 Wis. 2d 85, 763 N.W.2d 126, the court held that a restriction on renting units was a "reasonable rule[ or] regulation[] governing the use of the units."
¶ 66. An association's prohibition on the rental of a condominium unit is permissible under Wis. Stat. *102 § 703.10(1) and (3), which permit a condominium association to adopt rules or amend its bylaws to impose restrictions or requirements respecting the use of the units.[23] If the rental restriction on the use of a unit does not violate the right, title, or interest of an owner of a unit, surely a restriction or requirement limiting the use of recreational facilities[24] does not violate the right, title, or interest of an owner of a unit.[25]
*103 1 67. Alogical extension of the majority opinion's conclusion that Abbey Springs' recreational use policy violates the judgment of foreclosure is that restrictions on the use of a unit by a condominium association in its declaration, bylaws, or policies (or similar restrictions adopted by a homeowner's association) do not survive a judgment of foreclosure.
¶ 68. Under this reading of the majority opinion, a restriction on renting condominium units contained in the association's bylaws would not survive a foreclosure action, because it perpetually saddles the property and all subsequent owners with the restriction on renting.[26] This court concluded in Apple Valley, however, that such restrictions on renting are permissible, see 316 Wis. 2d 85, f 31, and the court of appeals has recognized that such restrictions remain in force even after a foreclosure. See Bankers Tr. Co. of Cal. v. Bregant, 2003 WI App 86, ¶ 15, 261 Wis. 2d 855, 661 N.W.2d 498 (recognizing that although an action to enforce a bylaw restriction on rental was premature, it was "uncontroverted that. . . the bylaw restriction of owner-occupancy was enforceable" following a foreclosure sale).
f 69. Moreover, under this logical extension of the majority opinion, restrictions imposed by homeowners' associations regarding, for instance, repair and maintenance of a home, architecture of homes, or the placement of homes would similarly be imperiled by a foreclosure action. Courts have concluded that restrictions imposed by a homeowners' association survive a foreclosure sale. See Thirteen S. Ltd. v. Summit Vill., Inc., 866 P.2d 257, 261 (Nev. 1993) *104 (holding that a homeowners' association's covenants, conditions, and restrictions were not extinguished in a tax foreclosure sale).
¶ 70. The majority opinion disavows this logical extension of its holding, stating that restrictions like " [a] use restriction that prohibits dogs on condominium property ..." are permissible because they do not "depend on a prior owner's actions and would not result in a foreclosed debt forever haunting a particular unit instead of following the prior owners to whom the debt belongs."[27] The majority opinion continues, asserting that such restrictions are permissible because they "generally apply to all property owners equally and not just to those who have the misfortune of purchasing units from prior owners who left unpaid debts behind."[28]
f 71. This line of reasoning is flawed for several reasons.
¶ 72. First, as I have explained above, Abbey Springs' recreational use policy does not create a spectral debt, "haunting" the unit until paid. A subsequent owner is free to pay or not pay the prior owner's past due assessments.
f 73. Second, Abbey Springs' recreational use policy, despite the majority opinion's view, does "generally apply to all property owners equally . . . ."[29] That is, all unit owners are subject to the same restriction, and any unit owners (regardless of how they purchased the unit) will be barred from the recreational facilities if there are unpaid assessments against the unit.
*105 ¶ 74. Third, and importantly, a purchaser buys a condominium unit on notice of the condominium association's (or homeowners' association's) declaration, bylaws, and policies. Prospective purchasers who want to use the recreational facilities and are unhappy about paying past due assessments may choose to purchase the unit at a lower price or may chose to buy a different property. Although the majority opinion characterizes this situation as a "misfortune,"[30] the buyer has a choice.
¶ 75. For the reasons stated, I conclude that Abbey Springs' recreational use policy does not constitute a lien on the foreclosed units and does not violate the judgment of foreclosure.
hH I — I
f 76. Finally, addressing an argument made by Walworth State Bank (and not resolved by the majority opinion),[31] I conclude that Abbey Springs' recreational use policy does not render title to the foreclosed units unmarketable.
¶ 77. Title is marketable if it "can be held in peace and quiet; not subject to litigation to determine its validity; not open to judicial doubt." Apple Valley, 316 Wis. 2d 85, ¶ 27 (quotation omitted).
¶ 78. Walworth State Bank argues that it is entitled to summary judgment on its declaratory judgment action because Abbey Springs' policy renders the "title [to the foreclosed units] unmarketable, or at the very least, adversely affects its marketability."
*106 ¶ 79. Wisconsin Stat. § 703.10(6) prohibits condominium bylaws from affecting the transfer of title to a condominium unit. Wisconsin Stat. § 703.10(6) states: "Title to a condominium unit is not rendered unmarketable or otherwise affected by any provision of the bylaws or by reason of any failure of the bylaws to comply with the provisions of this chapter."
¶ 80. This provision is "a protection of the title and is not a vehicle for a finding of impairment." Apple Valley, 316 Wis. 2d 85, ¶ 29 (citing Bankers Tr, 261 Wis. 2d 855, ¶¶ 18-19) (emphasis added).
¶ 81. Nevertheless, Walworth State Bank argues that Abbey Springs' recreational use policy affects the quality of the unit's title and its marketability.
f 82. In Apple Valley, we addressed whether a condominium bylaw prohibiting the rental of a condominium unit rendered the unit's title unmarketable. The Apple Valley court determined that although the rental restriction affected the use of the property, it did not affect the owner's ability to convey title. Apple Valley, 316 Wis. 2d 85, ¶ 28.
¶ 83. The same is true in the instant case. Although Walworth State Bank presented evidence that Abbey Springs' recreational use policy reduced the market value of the units, it presented no evidence that the restriction affected Walworth State Bank's ability to convey its title.
¶ 84. Walworth State Bank has not presented any evidence that the unavailability of the recreational facilities, which were not part of the common areas and were available only for an additional cost, rendered the title to the foreclosed units unmarketable.
*107 ¶ 85. Following the foreclosure, Walworth State Bank took title to the units free and clear of " 'all right, title, interest, lien or equity of redemption' in and to the property."[32]
¶ 86. Abbey Springs' recreational use policy simply allows Abbey Springs to exclude an owner from access to Abbey Springs' recreational facilities unless delinquent assessments are paid. It does not affect the owner's ability to convey title.
* * * *
¶ 87. Because I conclude that Abbey Springs' policy does not violate "well-established foreclosure law" or "effectively revive[] a lien against" the units, and that Walworth State Bank took title to the units following the foreclosure free of "all right, title, interest, lien or equity of redemption" held by Abbey Springs, I would affirm the court of appeals and remand to the circuit court with instructions to grant summary judgment in favor of Abbey Springs.
¶ 88. For the reasons set forth, I dissent and write separately.
¶ 89. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

 See majority op., ¶¶ 2, 13 n.7, 16, 26, 29, 30.

 Wisconsin Stat. § 703.165(3) states:
All assessments, until paid, together with interest on them and actual costs of collection, constitute a lien on the units on which they are assessed, if a statement of lien is filed within 2 years after the date the assessment becomes due. The lien is effective against a unit at the time the assessment became due regardless of when within the 2-year period it is filed. A statement of condominium lien is filed in the land records of the clerk of circuit court of the county where the unit is located, stating the description of the unit, the name of the record owner, the amount due *94 and the period for which the assessment was due. The clerk of circuit court shall index the statement of condominium lien under the name of the record owner in the judgment and lien docket. The statement of condominium lien shall be signed and verified by an officer or agent of the association as specified in the bylaws and then may be filed. On full payment of the assessment for which the lien is claimed, the unit owner shall be entitled to a satisfaction of the lien that may be filed with the clerk of circuit court.

 See majority op., ¶¶ 16-29.

 See majority op., ¶¶ 2, 27

 Majority op., ¶ 1.

 Majority op., ¶ 27.

 Majority op., ¶¶ 27, 30.

 See Highland Lakes Country Club & Cmty. Ass’n v. Franzino, 892 A.2d 646, 655 (N.J. 2006) (allowing the use of such leverage in a similar situation).

 See Apple Valley Gardens Ass'n, Inc. v. MacHutta, 2009 WI 28, ¶ 18, 316 Wis. 2d 85, 763 N.W.2d 126; accord Wis. Stat. § 703.10(1), (3).

 The Six-Month 'Limited Priority Lien' for Association Fees Under the Uniform Common Interest Ownership Act, at 1 (June 1, 2013), available at
*98 http ://www.uniformlaws. org/shared/docs/j eburpa/ 2013junl_JEBURPA_UCIOALienRriorityReport.pdf; see also Wisconsin Condominium Law Handbook, § 5.36 (4th ed. 2013).

 Wisconsin Stat. § 703.165 provides, among other things, that owners are liable for all assessments "coming due while owning a unit" and that" [a]ll assessments, until paid, together with interest on them and actual costs of collection, constitute a lien on the units on which they are assessed, if a statement of lien is filed within 2 years after the date the assessment becomes due." Wis. Stat. § 703.165(2), (3) (emphasis added). This lien is inferior to a first mortgage. See Wis. Stat. § 703.165(5)(b).

 See majority op., ¶ 23.

 Majority op., ¶ 27.

 See Walworth State Bank v. Abbey Springs Condo. Ass'n, Inc., No. 2014AP940, unpublished slip op., ¶ 18 (Wis. Ct. App. *99 Mar. 26, 2015) ("Nothing in Abbey Springs' policy gave Abbey Springs the right to pursue recovery of the unpaid assessments from [the Bank].").

 Majority op., ¶ 1.

 Dorr v. Sacred Heart Hosp., 228 Wis. 2d 425, 437, 597 N.W.2d 462 (Ct. App. 1999) (defining a lien as "a 'Qualified right of property which a creditor has in or over specific property of his debtor. ...' Because a lien is a right to encumber property until a debt is paid, it presupposes the existence of a debt.") (quoting Black's Law Dictionary 832 (5th ed. 1979)) (emphasis in original).
This court has endorsed Dorr's analysis of a lien, stating:
Dorr's analysis began with the proposition that a lien "presupposes the existence of a debt." 228 Wis. 2d at 437, 587 N.W.2d 462. That proposition is deeply rooted in our jurisprudence, see Boorman v. Wis. Rotary Engine Co., 36 Wis. 207, 212—13 (1874), and widely accepted. See 51 Am. Jur. 2d Liens § 13 (2011).
Gister v. Am. Family Mut. Ins. Co., 2012 WI 86, ¶ 51, 342 Wis. 2d 496, 818 N.W.2d 880.

 Majority op., ¶ 27.

 See majority op., ¶ 23; see also Badger III Ltd. P'ship v. Howard, Needles, Tammen & Bergendoff, 196 Wis. 2d 891, 898-99, 539 N.W.2d 904 (Ct. App. 1995) (recognizing that a debt unsatisfied in a foreclosure action and sheriffs sale survives the foreclosure).

 Majority op., ¶ 2.

 See majority op., f 27.

 The owners, like other condominium owners, will still be responsible for paying assessments coming due while they own the unit. They will not be responsible for any prior owners' delinquent assessments. See Wis. Stat. § 703.165(2) ("A unit owner shall be liable for all assessments, or installments thereof, coming due while owning a unit. ...").

 See majority op., ¶ 27.

 Wisconsin Stat. § 703.10(1) (with added emphasis) provides: "The administration of every condominium shall be governed by bylaws. Every unit owner shall comply strictly with the bylaws and with the rules adopted under the bylaws, as the bylaws or rules are amended from time to time . . .." Wisconsin Stat. § 703.10(3) provides: "The bylaws also may contain any other provision regarding the management and operation of the condominium, including any restriction on or requirement respecting the use and maintenance of the units and the common elements."
See also Wis. Stat. § 703.15(1), which provides that the association's board of directors generally governs the association's affairs. The association has the power to, among other things, "[e]xercise any other power conferred by the condominium instruments or bylaws." See Wis. Stat. § 703.15(3)(a)4.
The condominium association is created by a declaration on file with the register of deeds, bylaws, and policies adopted by the board of directors. See Wis. Stat. §§ 703.01(8), 703.07(1), 703.09, 703.10(1); Wisconsin Condominium Law Handbook, § 5.2 (4th ed. 2013).

 Underscoring this conclusion, Abbey Springs' recreational facilities are not common elements of the condominium in which the units at issue are located. See majority op., f 3.

 The Wisconsin Condominium Law Handbook, § 5.50 (4th ed. 2013), describes Apple Valley as "indicatfing] that restrictions do not violate the provisions of the Condominium Ownership Act and impl[ying] that broader restrictions may be enforceable. In addition, the decision extends to the rules and regulations as a source of restrictions." Abbey Springs' recreational use policy is one such rule or regulation.

 See majority op., ¶ 23.

 Majority op., ¶ 29.

 Majority op., ¶ 29.

 Majority op., ¶ 29.

 See majority op., ¶ 29

 See majority op., ¶ 13 n.7.

 Majority op., ¶ 6 (quoting the foreclosure judgment).