BOORMAN and another vs. THE WISCONSIN ROTARY ENGINE COMPANY and others.

LEASE: LIEN: ACTION. (1) *Lease until lessor shall repay lessee's advances, creates lien.* (2, 3) *Enforcement of such lien in equity.* (4) *Covenant construed.* (5) *Damages recoverable only in action at law.*

1. The defendant company leased to plaintiffs' firm a machine shop and foundry, and all the tools, etc., pertaining thereto, until April 1, 1879, or *until the company should perform all its covenants* contained in such agreement; while plaintiff covenanted to complete the building, and advance funds to furnish the same, and other funds to pay off the existing indebtedness of the company, such payments to be made only to such persons as the company should direct. The company covenanted to repay all such advances on the first of April, 1870. *Held,* that as the plaintiffs, by the terms of said agreement, were to retain possession of the property until the advances made by them were repaid, they had properly a *lien* upon the property for such advances.

2. One who has a lien on property, real or personal, may maintain an action in equity to have the amount of such lien determined, and to enforce payment thereof, by a sale of the property or otherwise.

3. M., one of the defendants herein, after recovering a judgment against the defendant company, caused an execution to be levied upon the machine shops, foundry, etc., above mentioned, as the property of said company, and the sheriff (also a defendant herein) advertised a sale thereof to take place in July, 1870. This action was then brought to restrain such sale, and to have plaintiffs' lien for advances determined and enforced. *Held,* that they were entitled to the relief sought, and it was error for the court, after finding that all the property in question was *personal* property, to dismiss the complaint on the ground that plaintiffs had an adequate remedy *at law.*

4. Plaintiffs having covenanted only to pay such debts of the defendant company as they should be *directed to pay* by a majority of the board of directors, and not having been so directed to pay the claim of M., the judgment of the latter against the company is not a valid claim against the plaintiffs; and this result is not affected by the alleged fact that two of the plaintiffs are directors of said company, and by their influence prevented the board from directing said claim of M. to be paid.

5. Plaintiffs cannot recover *in this action* for the seizure of the property and the sale of a part of it on execution, the defendant company hav-

ing no interest in that question; but, their right to the property being established in this action, they must be left to their appropriate legal remedy to recover damages.

APPEAL from the Circuit Court for *Jefferson* County.

The engine company defendant commenced the erection of a machine shop and foundry on the lands of the Milwaukee & St. Paul Railway Company in the village of Waterloo, and entered into an agreement in writing under seal, in the form of a lease, with the firm of *Boorman & Co.* (of which firm the plaintiffs are the surviving partners), by which agreement the company leased to that firm said machine shop and foundry, and all the tools, implements, machinery, rights and privileges pertaining thereto, from April 1, 1868, to April 1, 1870, or until the company should perform all its covenants contained in such agreement. *Boorman & Co.* covenanted therein to complete the building without delay, and to advance sufficient funds to furnish the same suitably for the carrying on of the intended business. The firm also covenanted to advance other sums of money not exceeding the amount of the then existing indebtedness of the company, to pay off such indebtedness; but with the proviso that payments should only be made by the firm in such sums and to such persons as the board of directors of the company should direct. The company covenanted to repay all such advances on the 1st day of April, 1870, without interest. This agreement bears date March 26, 1868, and was executed on behalf of the company by the defendant *Mattice* as its president.

*Boorman & Co.* went into possession under the lease, completed and furnished the building, and made the advances which they covenanted to make. These advances (as the complaint avers) amount to the sum of $3,100, and no part thereof has been repaid by the company.

The defendant *Mattice* had a claim against the company, which the board of directors refused to recognize or to direct

*Boorman & Co.* to pay.   He thereupon brought an action on such claim against the company, and in February, 1870, recovered judgment thereon for over $1,800.   Afterwards he caused an execution to be issued upon such judgment, and delivered the same to the defendant *Kellogg*, then the sheriff of the county ; and the defendant *Giles*, who was a deputy sheriff, levied upon and seized, by virtue of said execution, all and singular, the building, machinery, tools, etc., mentioned in such agreement, as the property of the company, and advertised a sale thereof to take place July 30, 1870.   Plaintiffs thereupon commenced this action, and in their complaint state substantially the foregoing facts.   The complaint contains a prayer for an injunction, and in addition thereto the following demand for judgment :   " And plaintiffs pray judgment against said defendant, the said engine company, for $3,100, and interest thereon from date, and costs of this proceeding, and that said judgment be made the first lien on all of said property belonging to said company defendant ; and that the same may be sold by said sheriff, and the proceeds applied first to the payment of plaintiff's judgment and costs of sale, and the residue, if any, to pay the said judgment of the said *Mattice.*"

The defendant *Mattice* alone answered.   His answer puts in issue the amount of the advances made by the firm of *Boorman & Co.* pursuant to their covenant, and alleges that the property in controversy was all personal property, and that the same was sold on the 22d day of October, 1870, under the execution, and bid off by him at such sale for $1,800, and was then delivered to him.

On the trial, all of the averments of the complaint were proved.   The undisputed evidence shows, not only that the plaintiffs' advances amount to $3,100, but that when they amounted to $2,999.92, the account was presented to the board of directors, and was examined and reported correct by a committee appointed for that purpose, and that on the 9th of May, 1870, the board *adopted* such report.   An item for machinery

accrued after that account was made up, which increased the account to the sum claimed.

The court found, in substance, that the facts stated in the complaint were proved, except that the amount of such advances was $2,000. The court also found that all of the property in question was personal property, and rendered judgment dismissing the complaint, with costs, on the ground that the plaintiffs have an adequate remedy at law. From that judgment the plaintiffs appealed.

*Weymouth & Hatch*, with *E. S. Bragg*, of counsel, for appellants, contended that plaintiffs had a lien upon and right to possession of the property in controversy. To defend this possession they had a remedy at law. But the legal remedy was not full and complete; because, first, there must be an accounting to determine the full extent of the interest of their lien; second, there must be some way to collect the lien, preserving its priority, out of the specific property. A court of law cannot do this, and resort must be had to equity for a full determination of the rights of the parties. 1 Story's Eq. Jur., § 506. Equity avoids circuity of action, and does complete justice at once. And when it has acquired jurisdiction, as to account, or for any purpose, it will retain the case for all purposes. *Hopkins v. Gilman*, 22 Wis., 476. If plaintiffs had suffered the property to go, and brought trespass, it would then have devolved upon them to establish an account in order to fix the value of their interest; or else they would have recovered the value of the property, and held the surplus, over and above their account, as trustees for the owner of the property, or for any creditor having a lien upon it. Hence a court of equity in the first instance was the proper forum to determine the account, the extent and priority of liens, and to sell and distribute the proceeds accordingly.

*Orton & Mulberger*, for respondents, argued that, aside from the mere question of equity jurisdiction, the judgment dismissing the bill was correct on the merits. But, admitting for the

sake of the argument that appellants had the first claim upon the property, their remedy was clear and adequate at law. Equity will never restrain the sale of personal property, except when the chattels are of a peculiar character and have a special and intrinsic value, or when a trust is thereby to be violated. *Floyd v. Loring*, 6 Ves., 774; *Brown v. Runals*, 14 Wis., 697. Here there is no trust to be violated, but rather one to be established by the sale, and carried on and executed according to the contract. The lien claimed by plaintiffs under their case cannot be in the nature of a chattel mortgage for future advances; for if such, it should be recorded or filed, and foreclosed; and even if a mortgage, it would not prevent the levy of an execution upon it to sell the mortgagor's interest, subject to the rights of the mortgagee. It cannot be a common law lien, either general or special; for a general lien can be had only on a certain class of property different from this, and a special lien can only be had on specific chattels made or repaired. *McFarland v. Wheeler*, 26 Wend., 466. Whatever plaintiffs' claim may be, a sale by the sheriff of the property as the property of the corporation could not defeat such claim. The sale would be subject to it; and if the sheriff had no right to levy on the property, appellants could bring their action at law, and have an adequate remedy. They cannot resort to equity to establish a purely legal right. *Wheeler v. McFarland*, 10 Wend., 320; *McIndoe v. Hazelton*, 19 Wis., 567.

LYON, J. I. It was clearly the purpose and intention of the parties to the lease or agreement, to give the firm of *Boorman & Co.* a lien for their advances upon all the property of the company which came to the possession of the firm pursuant thereto. That such purpose and intention was fully accomplished by the execution of the agreement, we cannot doubt. By the terms of the instrument, the firm was to retain possession of such property until the advances made by it should be repaid. A *lien* is defined to be simply a right to possess and

retain property until some charge attaching to it is paid and discharged. 1 Story's Eq. Jur., § 506. The tenure by which the firm held the property is in the nature of a pledge for the repayment of the advances. The right of a person in whose favor a lien exists, whether on real or personal property, to maintain an action in equity to have the amount of the lien determined, and to enforce payment thereof by a sale of the property, or otherwise, is too well settled to be questioned. Hence it seems very clear that *Boorman & Co.*, who have a lien upon the property held by virtue of such agreement, may maintain this action, which is an action in equity to have the amount of their lien determined, and to enforce payment thereof by a sale of the property subject to such lien.

II. The judgment of the defendant *Mattice* is a valid claim against the engine company, but not against *Boorman & Co.* That firm never agreed to pay his claim. They only covenanted to pay such debts of the company as they were directed to pay by a majority of the board of directors, and they were not so directed to pay this debt. It is said that two members of the firm were directors, and that their influence prevented the board from giving such direction. Conceding this to be so, still the facts remain that the board gave no such direction, and, in the absence of it, the firm was under no obligation, legal or equitable, to pay the claim, and had it paid the same would have had no additional lien for the amount thereof on the property.

The position of the plaintiff seems to be as it would have been had *Boorman & Co.*, in the first instance, covenanted to pay all indebtedness of the company except the demand of the defendant *Mattice*. Had such been the covenant, although it might have been a hardship upon the latter, it will not be denied that *Mattice* would have no valid claim against *Boorman & Co.*, and that his lien upon the property by virtue of the execution would be subordinate to theirs. And we think such is the case now. We see no escape from the conclusion that

the plaintiffs hold or held the possession of the property as security for their advances; and whatever lien the defendant *Mattice* has obtained thereon must be postponed to the lien of the plaintiffs.

It necessarily follows that the plaintiffs are entitled to the relief demanded, except the claim for interest. As to the amount of the advances, the learned circuit judge evidently did not consider the proofs; and in the view of the case taken by him, it was quite unnecessary that he should. He named $2,000 as the amount of such advances; but it was proved that the same amounted to the sum stated in the complaint.

The damages of the plaintiff for the seizure and sale of the property on execution cannot be litigated in this action. The engine company has no interest in that subject. Their rights in respect to the property being established by this action, the plaintiffs must be left to their appropriate legal remedies to recover such damages, as they may be advised.

The judgment must be reversed, and the cause remanded with directions to the circuit court to render judgment for the relief demanded in the complaint, except that no interest on advances can be allowed.

*By the Court.* — It is so ordered.