# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP940 |
| COMPLETE TITLE: | Walworth State Bank, |
| |         Plaintiff-Respondent-Petitioner, |
| |    v. |
| | Abbey Springs Condominium Association, Inc. and Abbey |
| | Springs, Inc., |
| |         Defendants-Appellants. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 363 Wis. 2d 655, 862 N.W.2d 903)
(Ct. App. 2015 – Unpublished)

| | |
|---|---|
| OPINION FILED: | April 29, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 9, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Walworth |
|   JUDGE: | Phillip A. Koss |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | ABRAHAMSON, J. dissents, joined by BRADLEY, A. W., J. |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the plaintiff-respondent-petitioner, there were briefs by *Edward F. Thompson*, and *Clair Law Offices, S.C.*, Delavan, and oral argument by *Edward F. Thompson*.

    For the defendants-appellants, there was a brief by *David C. Williams*, and *Harrison, Williams & McDonell, LLP*, Lake Geneva, and oral argument by *David C. Williams*.

    There was an amicus curiae brief by *John E. Knight*, *Kirsten E. Sprira*, and *Boardman & Clark LLP*, Madison, on behalf of the Wisconsin Bankers Association.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP940
(L.C. No. 2013CV855)

STATE OF WISCONSIN : IN SUPREME COURT

Walworth State Bank,

      Plaintiff-Respondent-Petitioner,

  v.

Abbey Springs Condominium Association, Inc. and
Abbey Springs, Inc.,

      Defendants-Appellants.

**FILED**

**APR 29, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded*.

¶1 REBECCA G. BRADLEY, J. We must decide whether a condominium policy violates Wisconsin law. Abbey Springs Condominium Association, Inc. and Abbey Springs, Inc. (collectively, "Abbey Springs") have a Membership and Guest Policy that forbids both current and subsequent unit owners from utilizing recreational facilities until unpaid condominium assessments are paid in full. In other words, the policy forbids new owners of a particular unit from utilizing recreational facilities if there are outstanding assessments

attributable to the unit. Following a foreclosure action and sheriff's sale of the property at issue to Walworth State Bank, the Bank paid the former owner's outstanding assessments under protest. Walworth State Bank then asserted that the Abbey Springs policy violates Wisconsin law because it impermissibly revives a lien on the condominium units that was eliminated by the foreclosure action. As an alternative argument, Walworth State Bank argues that the policy renders title to the units unmarketable. The Walworth County Circuit Court[1] agreed with Walworth State Bank and granted it summary judgment. The court of appeals reversed.[2] For the reasons that follow, we reverse the court of appeals.

¶2 We hold that Abbey Springs's Membership and Guest Policy effectively revived the lien against the property that the Order for Judgment on Foreclosure and Judgment (hereinafter Foreclosure Judgment) entered against Abbey Springs and the former unit owners had extinguished. Although Abbey Springs concedes that Walworth State Bank had no legal obligation to pay the former owners' unpaid assessments following foreclosure, the policy dictates that any unpaid assessments stay with the unit and transfer to the new owners rather than travel with the

---

[1] The Honorable Phillip A. Koss presiding.

[2] Walworth State Bank v. Abbey Springs Condo. Ass'n, No. 2014AP940, unpublished slip op. (Wis. Ct. App. Mar. 26, 2015).

former unit's owner who actually incurred the debt.[3]  The policy does so by preventing a new purchaser of any unit, whose only connection to the unpaid assessments is through the unit itself, from accessing the recreational facilities if the prior owner failed to pay his or her assessments.  As a result, the policy effectively allows Abbey Springs to assert a right against the property for the prior owner's unpaid assessments in violation of well-established foreclosure law.  Furthermore, the policy violates the Foreclosure Judgment that eliminated "all right, title, interest, lien or equity of redemption" of Abbey Springs in and to the foreclosed units.  Because we conclude that the condominium policy violates well-established foreclosure law and the Foreclosure Judgment entered in the underlying foreclosure action, we do not address Walworth State Bank's argument that the policy renders the unit's title unmarketable.

## I.  Background

### A.  Units 18 and 19 at Abbey Springs

¶3   Walworth State Bank held a first real estate mortgage on Units 18 and 19, a single family residence on two lots, in Abbey Springs Condominium No. 1.  Unit owners in Abbey Springs Condominium No. 1 pay assessments that allow access to recreational facilities that include a Yacht Club, restaurants,

---

[3] Presumably Abbey Springs could pursue a separate action against the former unit owners to recover the unpaid assessments.  Its Membership and Guest Policy nevertheless ties unpaid assessments to the unit itself, regardless of a change in unit ownership.

fitness and golf facilities, and boat slips.[4]  These recreational facilities are not listed as common elements of units located in Abbey Springs Condominium No. 1.

¶4  Abbey Springs has a Membership and Guest Policy that suspends both current unit owners and subsequent owners from the recreational facilities if unpaid assessments attributed to the unit are 90 days past due.  The policy, in pertinent part, provides:

> If any regular monthly or special assessment against any Unit is delinquent for more than ninety (90) days past its due date, the owner or owners of that Unit, and any subsequent owners, shall automatically and without notice be suspended from any use or occupation of the Yacht Club, Clubhouse Grille, Pool Café, fitness facilities, golf facilities, and boat launching facilities, until such time as assessments are paid in full.

¶5  In addition, Abbey Springs has Bylaws that govern operation of the property.  Article V, Section four, titled Waiver of Use, provides that "no unit owner may exempt himself from liability for his contribution towards the common expenses or recreational facilities expenses by waiver of the use or enjoyment of any of the common areas and facilities or the recreational facilities, or by abandonment of his unit."

---

[4] As we understand it, the assessments cover membership costs and unit owners are required to pay additional costs for the actual use and enjoyment of at least some of the recreational facilities.  For example, the Membership and Guest Policy indicates that members are provided "a member account for which they can charge any club-related expense" and that unit owners are responsible for all charged amounts.

B.  Underlying Foreclosure Action

¶6  In 2012, Walworth State Bank initiated a foreclosure action against the owners of units 18 and 19, a single family residence.  The Complaint named Abbey Springs as a defendant in that action due to its claim of unpaid assessments attributable to the property.  In January 2013, the Walworth County Circuit Court entered a Foreclosure Judgment.  It determined the total amount owed Walworth State Bank to be $855,511.41.  The circuit court's order and judgment in the foreclosure action also provided that the current owners and Abbey Springs were "forever barred and foreclosed of all right, title, interest, lien or equity of redemption" in and to the property.  The circuit court retained jurisdiction in the foreclosure action "until redemption, or confirmation of sale, whichever occurs first." Walworth State Bank later purchased the property in a sheriff's sale.  On April 29, 2013, the circuit court confirmed the sheriff's sale of the property to Walworth State Bank.

¶7  Prior to the sheriff's sale, Abbey Springs sent a letter to Walworth State Bank to alert the Bank to a policy it had adopted "to forbid use of the recreational facilities to the owners or occupants of any unit upon which assessments or other amounts owed to the Association are delinquent, regardless of whether or not the Association's lien rights were eliminated by foreclosure."  Abbey Springs suggested that Walworth State Bank include notification of this policy in its announcements of the sheriff's sale of the property.  On February 5, 2013, Abbey

5

Springs sent a follow up letter to Walworth State Bank with a copy of the Membership and Guest policy enclosed.

¶8 Walworth State Bank responded to Abbey Springs's letters on June 24, 2013 and asserted that the Membership and Guest Policy violated numerous laws and the order in the foreclosure action. On June 26, 2013, Abbey Springs countered that it "does not claim, and has never claimed, that Walworth State Bank or any grantee from Walworth State Bank is liable for past assessments due the Association."

¶9 Walworth State Bank arranged for the property to be sold to new buyers with a closing scheduled for July 12, 2013. However, on July 12, 2013, Abbey Springs's Executive Director issued a letter stating that the outstanding assessments would be satisfied if "the seller pays Abbey Springs $13,225.32." As a result, the new buyers refused to close on the property as scheduled. On the same day, July 12, 2013, Walworth State Bank sent Abbey Springs another letter accusing the condominium association of "thwarting" the sale and requiring Walworth State Bank to pay the outstanding assessments. Abbey Springs reasserted its position——the Bank was not required to pay the prior owner's outstanding assessments——in a July 16, 2013 letter. Ultimately and under protest, Walworth State Bank paid the prior owners' unpaid assessments in the amount of $13,225.32 to complete the sale of the property to the new owners.

## C. Procedural History

¶10 Walworth State Bank filed suit against Abbey Springs and asked the circuit court to declare Abbey Springs's policy in

6

violation of Wisconsin law and to order judgment in the amount of $13,225.32 for the assessments it paid under protest. The circuit court granted Walworth State Bank's summary judgment motion after considering cross-motions for summary judgment. It determined that Abbey Springs's policy violated Wisconsin law by holding new owners jointly and severally liable for the prior owners' unpaid assessments in violation of Wis. Stat. § 703.165(2) (2013-14)[5] and by affecting the quality and marketability of the property's title in violation of Wis. Stat. § 703.10(6). It also granted Walworth State Bank a monetary judgment against Abbey Springs in the amount of $13,225.32.

¶11 The court of appeals reversed. Walworth State Bank v. Abbey Springs Condo. Ass'n, No. 2014AP940, unpublished slip op. (Wis. Ct. App. Mar. 26, 2015). It held that the policy was not contrary to any Wisconsin statute and that Walworth State Bank had "no obligation to pay the delinquent assessments." Id., ¶18. Specifically, it held that Wis. Stat. § 703.165(5)(b), which establishes lien priority for unpaid assessments, did not govern the issue of liability for the unpaid assessments. Id., ¶16. It further held that Wis. Stat. § 703.165(2), which governs liability for assessments, does not govern liability for unpaid assessments in an involuntary grant, such as the sheriff's sale that occurred here. Id., ¶18. It further reasoned that "[t]he policy merely created a pay-to-play

---

[5] All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

requirement, and did not attempt to create joint and several liability in any respect."[6]  Id.

## II.  Analysis

¶12 Appellate courts independently review orders for summary judgment utilizing the "same methodology as the circuit court." Yahnke v. Carson, 2000 WI 74, ¶10, 236 Wis. 2d 257, 613 N.W.2d 102.  "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Wis. Stat. § 802.08(2) (1995-96)).

### A.  Inapplicability of Wis. Stat. § 703.165(2)

¶13 Walworth State Bank argues that Abbey Springs's Membership and Guest Policy violates Wis. Stat. § 703.165(2) by holding subsequent owners who obtain property in an involuntary sale jointly and severally liable for the unpaid assessments of

---

[6] The court of appeals also held that Abbey Springs's policy did not render the units' title unmarketable because Walworth State Bank failed to produce any evidence that the policy prevented it from conveying title. Walworth State Bank v. Abbey Springs Condo. Ass'n, No. 2014AP940, unpublished slip op., ¶20 (Wis. Ct. App. Mar. 26, 2015).

past owners.  It also asserts that the policy renders title to the units unmarketable in violation of Wis. Stat. § 703.10(6).[7]

¶14 Whether the Membership and Guest Policy is valid in light of the Foreclosure Judgment that eliminated "all right, title, interest, lien or equity of redemption" of Abbey Springs in and to the property, presents an issue of first impression that is not directly controlled by Wisconsin case law or the Wisconsin Statutes.  Although Walworth State Bank argues that Wis. Stat. § 703.165(2) governs and that the policy is invalid under this statute, we do not agree.

¶15 Wisconsin Stat. § 703.165 is titled: "Lien for unpaid common expenses, unpaid damages, and unpaid penalties."  Section 703.165(2) pertains to "liability for assessments" and states, in full:

> A unit owner shall be liable for all assessments, or installments thereof, coming due while owning a unit, including any assessments coming due during the pendency of any claim by the unit owner against the association or during any period in which the unit is not occupied by the unit owner or is leased or rented to any other person.  In a voluntary grant, the grantee shall be jointly and severally liable with the grantor for all unpaid assessments against the grantor for his or her share of the common expenses up to the time of the voluntary grant for which a statement of condominium lien is recorded, without prejudice to the

---

[7] Because we conclude that Abbey Springs's Membership and Guest Policy violates well-established foreclosure law, we do not address Walworth State Bank's alternative argument that the policy renders title to the units unmarketable under Wis. Stat. § 703.10(6).  "Typically, an appellate court should decide cases on the narrowest possible grounds."  Maryland Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15.

> rights of the grantee to recover from the grantor the amounts paid by the grantee for such assessments. Liability for assessments may not be avoided by waiver of the use or enjoyment of any common element or by abandonment of the unit for which the assessments are made.

Wis. Stat. § 703.165(2)(emphasis added). The statutory language emphasized above indicates that in a voluntary grant, a new owner is held jointly and severally liable for unpaid assessments owed by the prior owner. Walworth State Bank relies on this language to argue that the inverse must be true in an involuntary grant, such as a sheriff's sale. Specifically, Walworth State Bank's position is that in an involuntary grant, a new owner cannot be held jointly and severally liable for the outstanding assessments of the prior owner. However, we agree with the court of appeals that the language in § 703.165(2) pertaining to voluntary grants of property has no bearing on the involuntary grant at issue here. The liability of a new owner for the outstanding debt of the prior owner under the circumstances of an involuntary grant is not directly addressed in Chapter 703 and it is not this court's place to speak where the legislature was silent.[8]

---

[8] "The principle that a matter not covered is not covered is so obvious that it seems absurd to recite it." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93 (2012). "Courts must take statutes as they find them . . . . They are not the law-making body. They are not responsible for omissions in legislation." Id. (citing R.W.M. Dias, Jurisprudence 232 (4th ed. 1976)).

## B. The Law of Foreclosure

¶16 Instead, we turn to pertinent statutory provisions governing condominiums, the Foreclosure Judgment entered against Abbey Springs in the underlying foreclosure action, and well-established foreclosure law to render a decision. Chapter 703 of the Wisconsin Statutes, known as the Condominium Ownership Act, governs condominiums. It explains that unpaid condominium assessments "constitute a lien on the units on which they are assessed" as long as certain statutory requirements are met. Wis. Stat. § 703.165(3). Assessments are defined as "regular and special assessments for common expenses and charges, fines, or assessments against specific units or unit owners for damages to the condominium or for penalties for violations of the declaration, bylaws, or association rules." Wis. Stat. § 703.165(1).

¶17 Wisconsin Stat. § 703.165(5) also governs the priority given to a lien for unpaid assessments. Applicable here is § 703.165(5)(b), which provides that "a first mortgage recorded prior to the making of the assessment" has priority over a lien for unpaid condominium assessments.

¶18 Here, it is undisputed that the former owners of Units 18 and 19 had unpaid condominium association assessments. As Wis. Stat. § 703.165(3) indicates, these unpaid assessments constituted a lien against the units. It is also undisputed that Abbey Springs filed a claim for surplus in the foreclosure action "based on a 'Statement of Condominium Lien'" it filed against the former owners. Furthermore, the parties agree that

11

Walworth State Bank's interest, as the holder of a first mortgage on the units, takes priority over Abbey Springs's lien based on unpaid assessments. This position is supported by the plain language of Wis. Stat. § 703.165(5)(b), which gives a first mortgage holder priority over any lien for unpaid assessments that was recorded after the first mortgage.

¶19 Prioritization of Walworth State Bank's first mortgage over Abbey Springs's lien for unpaid assessments is reflected in the Foreclosure Judgment entered by the circuit court in the foreclosure action. In that action, the circuit court entered default judgment against the unit owners and Abbey Springs. Specifically, the circuit court ordered that the defendants, including Abbey Springs, "after the filing of the Lis Pendens herein, be forever barred and foreclosed of all right, title, interest, lien or equity of redemption in and to said mortgaged premises . . . ." Abbey Springs did not appeal the circuit court's Foreclosure Judgment.

¶20 The circuit court's order in the foreclosure action that eliminated "all right, title, interest, lien or equity of redemption in and to" the property aligns with Chapter 846 of the Wisconsin Statutes and the equitable purpose of foreclosure. In Wisconsin, and across much of the United States, judicial foreclosure is the available method of foreclosure. 1 Grant S. Nelson et al., Real Estate Finance Law § 7:12, at 903 (6th ed. 2014). Generally speaking, Chapter 846 of the Wisconsin Statutes sets forth a two-step procedure that governs the foreclosure process. Shuput v. Lauer, 109 Wis. 2d 164, 171, 325

12

N.W.2d 321 (1982). The first step includes the judgment of foreclosure and sale. Id. It is during this first step that a circuit court determines "the parties' legal rights in the underlying mortgage and obligation, including the right to a deficiency judgment." Bank Mut. v. S.J. Boyer Const., Inc., 2010 WI 74, ¶27, 326 Wis. 2d 521, 785 N.W.2d 462. Specifically, Wis. Stat. § 846.01 addresses the first step in the foreclosure process, the foreclosure judgment. Section 846.01(1) provides, in pertinent part:

> [I]n actions for the foreclosure of mortgages upon real estate, if the plaintiff recover, the court shall render judgment of foreclosure and sale, as provided in this chapter, of the mortgaged premises or so much of the premises as may be sufficient to pay the amount adjudged to be due upon the mortgage and obligation secured by the mortgage, with costs.

Id. This court has determined that § 846.01(1) "requires the court to render judgment of foreclosure and sale in successful foreclosure actions." Bank Mut., 326 Wis. 2d 521, ¶28.

¶21 The second step in foreclosure actions "carries into effect and enforces the judgment of foreclosure and sale." Id., ¶27. That is, after the judgment of foreclosure is entered and sale of the property completed, additional statutory proceedings take place to confirm the sale, determine the rights to surplus, if any, and enter deficiency judgment, if applicable. See Wis. Stats. §§ 846.162, 846.165, 846.167; see also Shuput, 109 Wis. 2d at 171.

¶22 In carrying out this two-step process, a circuit court ensures that the basic objectives of a foreclosure action are

13

met. Secondary sources and Wisconsin case law have explained the objective and function of foreclosure actions in various ways:

> The basic objective of an action to foreclose is to enable the mortgage creditor to get his debt paid out of the security. To accomplish this end[,] it is the purpose of the foreclosure sale to end the right to redeem of all persons who have interests in the property subject to the mortgage and to vest in the purchaser on the sale the title to the property as it stood at the time of the execution of the mortgage.

George E. Osborne, Handbook on the Law of Mortgages § 319, at 669 (2d ed. 1970). This court has explained that "the judgment of foreclosure and sale determines the rights of the parties and disposes of the entire matter in litigation . . . ." Shuput, 109 Wis. 2d at 172. Furthermore, the Restatement (Third) of Property addresses the effect of foreclosure actions on lien priorities: "A valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed and whose holders are properly joined or notified under applicable law." Restatement (Third) of Property (Mortgages) § 7.1 (1997) (emphasis added). In regard to the first priority mortgage, this court has explained that, generally, "a proper foreclosure proceeding, when confirmed, satisfies the debt [if there are sufficient funds] and extinguishes the mortgage." Winter v. Knaak, 236 Wis. 367, 370, 294 N.W. 488 (1940). With regard to the rights of junior lienholders such as Abbey Springs, the court of appeals has stated:

14

> [W]hen property is sold at a foreclosure sale, the property is transferred to the purchaser who receives the interest of the mortgagor and whatever interest the other parties to the suit possessed at the commencement of the action. As a result, those who were parties to the action can no longer assert any claim or right of interest against the property. The interest of such parties is deemed "foreclosed," leaving them to look only to sale proceeds for satisfaction of their claim.

First Wis. Trust Co. v. Rosen, 143 Wis. 2d 468, 472-73, 422 N.W.2d 128 (Ct. App. 1988) (citations omitted). In sum, secondary sources and Wisconsin case law demonstrate that foreclosure actions are designed to: (1) bring together creditors' claims to a property for disposition in a single proceeding; (2) apply proceeds from the foreclosure sale to satisfy the liens of those parties to the foreclosure action in order of priority; and (3) extinguish unsatisfied junior lienholders' rights[9] to the property so that title transfers unencumbered to the new purchaser.

¶23 Abbey Springs attempts to evade the effect of the Foreclosure Judgment in this case by acknowledging that its lien was extinguished in the foreclosure action but claiming that the underlying debt——the unpaid assessments——survives due to its connection to Units 18 and 19. Indeed the underlying debt does survive and nothing in the Foreclosure Judgment prevents Abbey Springs from suing the former unit owners to recover that debt. What Abbey Springs is foreclosed from doing is perpetually

---

[9] Junior lienholders' rights are so extinguished when the junior lienholders are made parties to the foreclosure action.

saddling the property and all subsequent owners with debt owed by the former unit owners unless and until that debt is paid. Not only did the Foreclosure Judgment extinguish the "lien" it also "forever barred and foreclosed" all "right" and all "interest" of Abbey Springs in and to the property. The circuit court possessed both statutory and equitable power to effectuate this comprehensive foreclosure of rights and interests.

¶24 In carrying out the two-step foreclosure procedure, circuit courts are not limited to the powers and duties expressly provided in Chapter 846. "Foreclosure proceedings are equitable in nature, and the circuit court has the equitable authority to exercise discretion throughout the proceedings." GMAC Mortg. Corp. v. Gisvold, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998). In other words, the foreclosure judgment, in accordance with Wis. Stat. § 846.01 as well as the equitable authority of the circuit court, determines the rights of the parties with interests in the foreclosed property.

¶25 The purpose of foreclosure law and the statutory scheme governing foreclosure in Wisconsin guide our decision. As discussed, the purpose of foreclosure is to allow a mortgagee to collect what it is owed through, generally speaking, the sale of the mortgaged property. See Osborne, supra § 319, at 669. To achieve this purpose, a foreclosure action determines the rights of the parties to the subject property and restores "the title to the property as it stood at the time of the execution of the mortgage." Id. Here, but for Walworth State Bank's payment of the former owners' unpaid assessments, title would

16

not have been so restored because the former owners' debt, which Abbey Springs claims survives the foreclosure action, would continue to affect the current owners' ability to utilize the recreational facilities.  Moreover, Chicago Title Company issued a commitment for title insurance to the then-prospective owners containing an exception from coverage for the unpaid assessments.

¶26 In accordance with Wis. Stat. § 846.01 and its equitable powers, the circuit court eliminated all rights of Abbey Springs and the former owners to the property in the foreclosure action.  However, Abbey Springs's Membership and Guest Policy contravenes the circuit court's order in the foreclosure action by reviving an interest in the units that the circuit court eliminated.  The policy does so because unpaid assessments attributable to the units remain attributable to the units even after foreclosure.  This is contrary to both the judgment of foreclosure, which eliminated not only the lien but all of Abbey Springs's rights and interests in and to the property in question, and well-established foreclosure law.  As a result, the condominium policy as applied in this case violates both the purpose of foreclosure and the circuit court's Foreclosure Judgment.

¶27 The fact that Walworth State Bank had no legal obligation to pay the former owners' outstanding assessments after foreclosure does not change our decision.  The connection Walworth State Bank had to the outstanding assessments was through its ownership of the property after purchase at the

17

sheriff's sale. Abbey Springs's policy improperly tethers the unpaid assessments to the unit itself by prohibiting subsequent owners from utilizing the recreational facilities. This is an assertion of a right against the property itself regardless of whether or not Abbey Springs would have been able to legally collect the unpaid assessments from Walworth State Bank or a later owner. We agree with the dissent that "a lien cannot exist independent of a debt." Dissent, ¶56. However, here, as we have explained, Abbey Springs's policy ties the unpaid assessment debt——owed by the former owners of the units——to the units themselves, thereby impermissibly reviving an interest extinguished by the foreclosure action. The dissent disregards the fact that not only were <u>liens</u> extinguished by the Foreclosure Judgment but also "all right, title, interest, lien or equity of redemption" were also eliminated.

¶28 Additionally, contrary to the court of appeals' suggestion otherwise, Abbey Springs's policy cannot be characterized as a pay-to-play policy because it requires the new owners to continue to pay monthly assessments for the recreational facilities regardless of whether or not they use the facilities or are prohibited from using them. Under the Bylaws, new owners must continue to pay monthly assessments for the recreational facilities even if the Membership and Guest Policy prohibits them from setting foot in any of the recreational facilities due to the <u>prior owners' unpaid</u> <u>assessments</u>. If the Membership and Guest Policy prohibited only current owners from utilizing recreational facilities when those

18

current owners failed to pay assessments, we might be able to characterize the policy as a pay-to-play policy. However, the Bylaws require owners to pay assessments for the recreational facilities while, at the same time, the Membership and Guest Policy prohibits owners from using the recreational facilities based on the unpaid assessments of prior owners. This is not a pay-to-play policy.

¶29 We recognize that condominium owners are often subject to a variety of enforceable use restrictions imposed under the declaration and bylaws pertaining to their units. See, e.g., Wis. Stats. §§ 703.09(1)(g), 703.10(3). However, we disagree with the dissent's assertion that under our holding no use restriction imposed by a condominium or homeowners association could survive a foreclosure action. See dissent, ¶¶67-69. Our holding does not extend to enforceable use restrictions and is far more narrow than the dissent suggests. Abbey Springs's Membership and Guest Policy cannot survive a foreclosure action to the extent it restricts a current owner's use of certain recreational facilities based on the failure of the prior owners to pay their debts. Such a policy ties the debts of the prior owners to the units, in violation of well-established foreclosure law as reflected in the Foreclosure Judgment. A use restriction that prohibits dogs on condominium property, for example, would not depend on a prior owner's actions and would not result in a foreclosed debt forever haunting a particular unit instead of following the prior owners to whom the debt belongs. The same could be said about the use restriction on

renting upheld by <u>Apple Valley Gardens Ass'n, Inc. v. MacHutta</u>, 2009 WI 28, ¶3, 316 Wis. 2d 85, 763 N.W.2d 126.[10] The dissent disregards the obvious fact that enforceable use restrictions generally apply to all property owners equally and not just to those who have the misfortune of purchasing units from prior owners who left unpaid debts behind.

### III. Conclusion

¶30 We hold that Abbey Springs's Membership and Guest Policy violates well-established foreclosure law and the Foreclosure Judgment entered against Abbey Springs. It does so by tethering unpaid condominium assessments to the units, which effectively results in Abbey Springs asserting a right against the property that the Foreclosure Judgment eliminated. Under the undisputed facts, Walworth State Bank is entitled to summary judgment as a matter of law. Accordingly, we reverse the court

---

[10] Comparing the policy at issue in this case with the rental restriction at issue in <u>Apple Valley Gardens Ass'n, Inc. v. MacHutta</u>, 2009 WI 28, 316 Wis. 2d 85, 763 N.W.2d 126, is not helpful considering that <u>Apple Valley</u> did not involve a foreclosed property or even a sale of a property. <u>Id.</u>, ¶9. In <u>Apple Valley</u> we rejected the argument that a restriction on renting must appear in a condominium's declaration, rather than its bylaws, in order to be valid. <u>Id.</u>, ¶¶1, 3. We also held that the specific condominium declaration at issue did not create a right to rent and that a restriction on renting did not render title unmarketable under Wis. Stat. § 703.10(6). <u>Id.</u>, ¶3. Our holding that the rental restriction at issue in <u>Apple Valley</u> was valid has no bearing on the application of the Membership and Guest Policy in the context of the foreclosed units.

of appeals and remand to the circuit court to enter an order consistent with our opinion.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶31 SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. I agree with the result reached by the court of appeals. The majority opinion asserts that Abbey Springs' policy violates "well-established foreclosure law."[1] Asserting that something is "well-established" does not mean it is, in fact, "well-established." The majority opinion fails to prove its assertion.

¶32 Let's look at the facts. Abbey Springs, a condominium association, adopted a policy barring an owner of a condominium unit from using certain recreational facilities if "regular monthly or special assessment[s]" are more than 90 days past due, unless the unpaid assessments (including a prior owners' unpaid assessments) are paid.

¶33 Abbey Springs' policy provides in relevant part:

> If any regular monthly or special assessment against any Unit is delinquent for more than ninety (90) days past its due date, the owner or owners of that Unit, and any subsequent owners, shall automatically and without notice be suspended from any use or occupation of the Yacht Club, Clubhouse Grille, Pool Café, fitness facilities, golf facilities, and boat launching facilities, until such time as assessments are paid in full.

Majority op., ¶4.

¶34 In the instant case, the previous owners of the two condominium units at issue were delinquent in paying their mortgage and their assessments. Walworth State Bank, the mortgagee, brought a foreclosure action naming the unit owners

---

[1] See majority op., ¶¶2, 13 n.7, 16, 26, 29, 30.

1

and Abbey Springs as defendants. Abbey Springs was named as a defendant because Abbey Springs had a lien for unpaid assessments secured against the units pursuant to Wis. Stat. § 703.165(3).[2]

¶35 The circuit court entered a judgment in the foreclosure action providing that the owners of the foreclosed units and Abbey Springs and all persons claiming under them were "forever barred and foreclosed of all right, title, interest, lien or equity of redemption" in and to the units. Walworth State Bank bought the units at issue in a sheriff's sale.

¶36 The question presented is whether Abbey Springs' policy barring an owner of a condominium unit from using certain

---

[2] Wisconsin Stat. § 703.165(3) states:

All assessments, until paid, together with interest on them and actual costs of collection, constitute a lien on the units on which they are assessed, if a statement of lien is filed within 2 years after the date the assessment becomes due. The lien is effective against a unit at the time the assessment became due regardless of when within the 2-year period it is filed. A statement of condominium lien is filed in the land records of the clerk of circuit court of the county where the unit is located, stating the description of the unit, the name of the record owner, the amount due and the period for which the assessment was due. The clerk of circuit court shall index the statement of condominium lien under the name of the record owner in the judgment and lien docket. The statement of condominium lien shall be signed and verified by an officer or agent of the association as specified in the bylaws and then may be filed. On full payment of the assessment for which the lien is claimed, the unit owner shall be entitled to a satisfaction of the lien that may be filed with the clerk of circuit court.

recreational facilities if "regular monthly or special assessment[s]" are more than 90 days past due, unless the unpaid assessments (including a prior owners' delinquent assessments) are paid, may be enforced against the purchaser of the condominium units following a foreclosure sale. For ease of discussion, I will refer to this policy restricting access to the recreational facilities as "Abbey Springs' recreational use policy."

¶37 The majority opinion asserts that Abbey Springs' recreational use policy violates Wisconsin law in two respects:

1. Abbey Springs' recreational use policy "impermissibly revives a lien on the condominium units that was eliminated by the foreclosure action." See majority op., ¶1.

2. Abbey Springs' recreational use policy violates the circuit court's order for judgment on foreclosure. The judgment eliminated "all right, title, interest, lien or equity of redemption" of Abbey Springs in and to the foreclosed units. See majority op., ¶¶2, 30.

¶38 Everyone agrees that the statutory lien against the units for the unpaid assessments was extinguished in the foreclosure action.[3] Everyone agrees that a purchaser of the units at issue is not personally liable for prior unpaid assessments.[4]

---

[3] See majority op., ¶¶16-29.

[4] See majority op., ¶¶2, 27

3

¶39 Although the statutory lien is gone and the new owners of the units are not personally liable for prior unpaid assessments, the majority opinion states (in conclusory fashion and without citation to authority) that Abbey Springs' recreational use policy "impermissibly revives a lien on the condominium units that was eliminated by the foreclosure action,"[5] "improperly tethers the unpaid assessments to the unit itself,"[6] and asserts "a right against the property."[7]

¶40 I disagree with the majority opinion. This "revived," "tethered," resurrected lien "haunting a particular unit" is a figment of the majority opinion's imagination not traceable to any statute or common law principle. The statutory lien is gone; no lien exists to haunt, or to be revived, tethered, or resurrected.

¶41 Nevertheless, the majority opinion concludes that Abbey Springs' recreational use policy amounts to Abbey Springs' claiming a "right, title, interest, lien or equity of redemption in and to" the foreclosed units that was barred by the judgment of foreclosure. The majority opinion does not explain what "right, title, interest, lien or equity of redemption in and to" the foreclosed units Abbey Springs is claiming. The majority opinion cannot explain itself because Abbey Springs is not

---

[5] Majority op., ¶1.

[6] Majority op., ¶27.

[7] Majority op., ¶¶27, 30.

4

claiming a "right, title, interest, lien or equity of redemption in and to" the foreclosed units.

¶42 With respect to the judgment of foreclosure, Abbey Springs does not claim a lien on the foreclosed units. Abbey Springs' recreational use policy does not in any way revive the extinguished lien.

¶43 Abbey Springs does not claim an equity of redemption in and to the foreclosed units.

¶44 Abbey Springs is not using its recreational use policy to claim a right, title, or interest in and to the foreclosed units. Abbey Springs is, as several briefs point out, using access to the recreational facilities, which are not common elements of the condominium at issue, as "leverage to compel satisfaction of all [assessments in] arrears."[8]

¶45 Restrictions on the use of the unit itself are permissible under Wisconsin law.[9] If use of the unit may be restricted, surely a restriction on the use of the association's recreational facilities is permissible, even if used as leverage to compel the payment of delinquent assessments.

¶46 In Part II, below, I conclude that Abbey Springs' recreational use policy does not affect the marketable title to the units.

---

[8] See Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 892 A.2d 646, 655 (N.J. 2006) (allowing the use of such leverage in a similar situation).

[9] See Apple Valley Gardens Ass'n, Inc. v. MacHutta, 2009 WI 28, ¶18, 316 Wis. 2d 85, 763 N.W.2d 126; accord Wis. Stat. § 703.10(1), (3).

¶47 In sum, the majority opinion contravenes basic principles of real property law, foreclosure law, and condominium law.

¶48 For the reasons set forth, I would affirm the court of appeals and hold that Abbey Springs' recreational use policy is enforceable.

I

¶49 Condominium associations' expenses are funded largely through "assessments," which an association may levy among unit owners. See Wis. Stat. § 703.16(2)(a).

¶50 The significant problem posed for condominium associations by unpaid assessments is the issue underlying the instant case.

¶51 The problem, simply stated, is that unless a condominium association can recover delinquent assessments from the delinquent unit owner (or, under a policy such as Abbey Springs has adopted, from a subsequent owner), the cost of the delinquent assessments will be passed on to the owners of other condominium units. As a Report of the Joint Editorial Board for Uniform Real Property Acts explained:

> If some owners do not pay their proportionate share of common expenses, the association will be forced to shift the burden of delinquent assessments to the remaining unit owners through increased assessments or

reduced services and maintenance, potentially threatening property values within the community.[10]

¶52 To enable a condominium association to collect unpaid assessments, Wis. Stat. § 703.165(3) creates a lien on a unit for certain unpaid assessments.[11] This statutory lien was extinguished in the foreclosure action.[12] Everybody agrees the statutory lien is extinguished. No ifs, ands, or buts.

¶53 To further address the problem of unpaid assessments and the limitations of the statutory lien for unpaid assessments, Abbey Springs adopted its recreational use policy, restricting access to Abbey Springs' recreational facilities as leverage to compel a unit owner to pay a prior owner's delinquent assessments. Everyone, including Walworth State Bank, was notified of Abbey Springs' recreational use policy.

¶54 The parties agree, and the majority opinion acknowledges, that under Abbey Springs' recreational use policy,

---

[10] The Six-Month 'Limited Priority Lien' for Association Fees Under the Uniform Common Interest Ownership Act, at 1 (June 1, 2013), available at http://www.uniformlaws.org/shared/docs/jeburpa/2013jun1_JEBURPA_UCIOA%20Lien%20Priority%20Report.pdf; see also Wisconsin Condominium Law Handbook, § 5.36 (4th ed. 2013).

[11] Wisconsin Stat. § 703.165 provides, among other things, that owners are liable for all assessments "coming due while owning a unit" and that "[a]ll assessments, until paid, together with interest on them and actual costs of collection, constitute a lien on the units on which they are assessed, if a statement of lien is filed within 2 years after the date the assessment becomes due." Wis. Stat. § 703.165(2), (3) (emphasis added). This lien is inferior to a first mortgage. See Wis. Stat. § 703.165(5)(b).

[12] See majority op., ¶23.

7

an owner of a unit "ha[s] no legal obligation to pay the former owners' outstanding assessments after foreclosure . . . ."[13] In other words, Walworth State Bank (and any person purchasing the units from the Bank) is not liable for the prior owner's unpaid assessments.[14] Refusing to pay the prior owner's delinquent assessments results only in the new owner's exclusion from Abbey Springs' recreational facilities.

¶55 Nevertheless, the majority opinion concludes that Abbey Springs' recreational use policy "impermissibly revives a lien on the condominium units that was eliminated by the foreclosure action."[15]

¶56 No lien was revived under Abbey Springs' recreational use policy. The "well-established law" is that a lien cannot exist independent of a debt.[16] A lien secures payments for

---

[13] Majority op., ¶27.

[14] See Walworth State Bank v. Abbey Springs Condo. Ass'n, Inc., No. 2014AP940, unpublished slip op., ¶18 (Wis. Ct. App. Mar. 26, 2015) ("Nothing in Abbey Springs' policy gave Abbey Springs the right to pursue recovery of the unpaid assessments from [the Bank].").

[15] Majority op., ¶1.

[16] Dorr v. Sacred Heart Hosp., 228 Wis. 2d 425, 437, 597 N.W.2d 462 (Ct. App. 1999) (defining a lien as "a 'Qualified right of property which a creditor has in or over specific property of his debtor . . . .' Because a lien is a right to encumber property until a debt is paid, it presupposes the existence of a debt.") (quoting Black's Law Dictionary 832 (5th ed. 1979)) (emphasis in original).

This court has endorsed Dorr's analysis of a lien, stating:

Dorr's analysis began with the proposition that a lien "presupposes the existence of a debt." 228 Wis. 2d at

(continued)

8

debts due the lienholder and facilitates the satisfaction of that obligation.

¶57 The majority opinion acknowledges this "well-established" law, but does not recognize its importance in the instant case.[17]

¶58 In the instant case, Walworth State Bank and the new owners of the foreclosed units are not indebted to Abbey Springs for the past owners' unpaid assessments. The new owners are not personally liable to Abbey Springs for any past unpaid assessments. The prior owners of the units remain indebted to Abbey Springs for unpaid assessments they incurred while owners.[18] Stated simply, the foreclosure action severed the debt of the prior owners for unpaid assessments from the collateral; the debt remained that of the prior owners and the collateral was gone.

¶59 The majority opinion invents a "straw lien" and then blows it down, concluding that Abbey Springs' recreational use

---

437, 587 N.W.2d 462. That proposition is deeply rooted in our jurisprudence, see Boorman v. Wis. Rotary Engine Co., 36 Wis. 207, 212-13 (1874), and widely accepted. See 51 Am. Jur. 2d Liens § 13 (2011).

Gister v. Am. Family Mut. Ins. Co., 2012 WI 86, ¶51, 342 Wis. 2d 496, 818 N.W.2d 880.

[17] Majority op., ¶27.

[18] See majority op., ¶23; see also Badger III Ltd. P'ship v. Howard, Needles, Tammen & Bergendoff, 196 Wis. 2d 891, 898-99, 539 N.W.2d 904 (Ct. App. 1995) (recognizing that a debt unsatisfied in a foreclosure action and sheriff's sale survives the foreclosure).

9

policy violates "well-established foreclosure law."[19] The majority opinion does not explain what "well-established foreclosure law" Abbey Springs' recreational use policy violates.

¶60 I turn now to the second rationale of the majority opinion: Abbey Springs' recreational use policy violates the circuit court's order for judgment on foreclosure. The judgment eliminated "all right, title, interest, lien or equity of redemption" of Abbey Springs in and to the foreclosed units. See majority op., ¶¶2, 30.

¶61 I agree with the majority opinion that the five elements of the foreclosure judgment——right, title, interest, lien, and equity of redemption——should be analyzed.[20] I have already explained that Abbey Springs does not claim, and is not entitled to claim, a lien in and to the foreclosed units. Nor does Abbey Springs claim an equity of redemption in and to the foreclosed units. So what right, title, or interest does Abbey Springs claim in and to the foreclosed units?

¶62 The answer is that Abbey Springs does not claim any right, title, or interest in and to the foreclosed units. Abbey Springs' recreational use policy restricts the unit owners' access to certain recreational facilities, as several briefs claim, as leverage to compel satisfaction of all assessments in arrears.

---

[19] Majority op., ¶2.

[20] See majority op., ¶27.

¶63 If an owner wants to live in a condominium unit at Abbey Springs without using the recreational facilities, the owner need not pay any prior owner's delinquent assessments.[21]

¶64 A restriction on the use of recreational facilities used as leverage to compel satisfaction of all assessments in arrears is not, as the majority opinion claims, a right, title, or interest by Abbey Springs in and to the foreclosed units.[22] This court has allowed condominium associations to restrain an owner's use of a unit. If a condominium association can restrict an owner's use of a unit, it surely can restrict the use of recreational facilities.

¶65 In Apple Valley Gardens Ass'n, Inc. v. MacHutta, 2009 WI 28, ¶24, 316 Wis. 2d 85, 763 N.W.2d 126, the court held that a restriction on renting units was a "reasonable rule[ or] regulation[] governing the use of the units."

¶66 An association's prohibition on the rental of a condominium unit is permissible under Wis. Stat. § 703.10(1) and (3), which permit a condominium association to adopt rules or amend its bylaws to impose restrictions or requirements

---

[21] The owners, like other condominium owners, will still be responsible for paying assessments coming due while they own the unit. They will not be responsible for any prior owners' delinquent assessments. See Wis. Stat. § 703.165(2) ("A unit owner shall be liable for all assessments, or installments thereof, coming due while owning a unit . . . .").

[22] See majority op., ¶27.

respecting the use of the units.[23]  If the rental restriction on the use of a unit does not violate the right, title, or interest of an owner of a unit, surely a restriction or requirement limiting the use of recreational facilities[24] does not violate the right, title, or interest of an owner of a unit.[25]

---

[23] Wisconsin Stat. § 703.10(1) (with added emphasis) provides: "The administration of every condominium shall be governed by bylaws.  Every unit owner shall comply strictly with the bylaws and with the rules adopted under the bylaws, as the bylaws or rules are amended from time to time . . . ." Wisconsin Stat. § 703.10(3) provides:  "The bylaws also may contain any other provision regarding the management and operation of the condominium, including any restriction on or requirement respecting the use and maintenance of the units and the common elements."

See also Wis. Stat. § 703.15(1), which provides that the association's board of directors generally governs the association's affairs.  The association has the power to, among other things, "[e]xercise any other power conferred by the condominium instruments or bylaws."  See Wis. Stat. § 703.15(3)(a)4.

The condominium association is created by a declaration on file with the register of deeds, bylaws, and policies adopted by the board of directors.  See Wis. Stat. §§ 703.01(8), 703.07(1), 703.09, 703.10(1); Wisconsin Condominium Law Handbook, § 5.2 (4th ed. 2013).

[24] Underscoring this conclusion, Abbey Springs' recreational facilities are not common elements of the condominium in which the units at issue are located.  See majority op., ¶3.

[25] The Wisconsin Condominium Law Handbook, § 5.50 (4th ed. 2013), describes Apple Valley as "indicat[ing] that restrictions do not violate the provisions of the Condominium Ownership Act and impl[ying] that broader restrictions may be enforceable.  In addition, the decision extends to the rules and regulations as a source of restrictions."  Abbey Springs' recreational use policy is one such rule or regulation.

¶67 A logical extension of the majority opinion's conclusion that Abbey Springs' recreational use policy violates the judgment of foreclosure is that restrictions on the use of a unit by a condominium association in its declaration, bylaws, or policies (or similar restrictions adopted by a homeowner's association) do not survive a judgment of foreclosure.

¶68 Under this reading of the majority opinion, a restriction on renting condominium units contained in the association's bylaws would not survive a foreclosure action, because it perpetually saddles the property and all subsequent owners with the restriction on renting.[26] This court concluded in Apple Valley, however, that such restrictions on renting are permissible, see 316 Wis. 2d 85, ¶31, and the court of appeals has recognized that such restrictions remain in force even after a foreclosure. See Bankers Tr. Co. of Cal. v. Bregant, 2003 WI App 86, ¶15, 261 Wis. 2d 855, 661 N.W.2d 498 (recognizing that although an action to enforce a bylaw restriction on rental was premature, it was "uncontroverted that . . . the bylaw restriction of owner-occupancy was enforceable" following a foreclosure sale).

¶69 Moreover, under this logical extension of the majority opinion, restrictions imposed by homeowners' associations regarding, for instance, repair and maintenance of a home, architecture of homes, or the placement of homes would similarly be imperiled by a foreclosure action. Courts have concluded

---

[26] See majority op., ¶23.

13

that restrictions imposed by a homeowners' association survive a foreclosure sale. See Thirteen S. Ltd. v. Summit Vill., Inc., 866 P.2d 257, 261 (Nev. 1993) (holding that a homeowners' association's covenants, conditions, and restrictions were not extinguished in a tax foreclosure sale).

¶70 The majority opinion disavows this logical extension of its holding, stating that restrictions like "[a] use restriction that prohibits dogs on condominium property . . ." are permissible because they do not "depend on a prior owner's actions and would not result in a foreclosed debt forever haunting a particular unit instead of following the prior owners to whom the debt belongs."[27] The majority opinion continues, asserting that such restrictions are permissible because they "generally apply to all property owners equally and not just to those who have the misfortune of purchasing units from prior owners who left unpaid debts behind."[28]

¶71 This line of reasoning is flawed for several reasons.

¶72 First, as I have explained above, Abbey Springs' recreational use policy does not create a spectral debt, "haunting" the unit until paid. A subsequent owner is free to pay or not pay the prior owner's past due assessments.

¶73 Second, Abbey Springs' recreational use policy, despite the majority opinion's view, does "generally apply to

---

[27] Majority op., ¶29.

[28] Majority op., ¶29.

all property owners equally . . . ."[29] That is, all unit owners are subject to the same restriction, and any unit owners (regardless of how they purchased the unit) will be barred from the recreational facilities if there are unpaid assessments against the unit.

¶74 Third, and importantly, a purchaser buys a condominium unit on notice of the condominium association's (or homeowners' association's) declaration, bylaws, and policies. Prospective purchasers who want to use the recreational facilities and are unhappy about paying past due assessments may choose to purchase the unit at a lower price or may chose to buy a different property. Although the majority opinion characterizes this situation as a "misfortune,"[30] the buyer has a choice.

¶75 For the reasons stated, I conclude that Abbey Springs' recreational use policy does not constitute a lien on the foreclosed units and does not violate the judgment of foreclosure.

II

¶76 Finally, addressing an argument made by Walworth State Bank (and not resolved by the majority opinion),[31] I conclude that Abbey Springs' recreational use policy does not render title to the foreclosed units unmarketable.

---

[29] Majority op., ¶29.

[30] See majority op., ¶29

[31] See majority op., ¶13 n.7.

15

¶77 Title is marketable if it "can be held in peace and quiet; not subject to litigation to determine its validity; not open to judicial doubt." Apple Valley, 316 Wis. 2d 85, ¶27 (quotation omitted).

¶78 Walworth State Bank argues that it is entitled to summary judgment on its declaratory judgment action because Abbey Springs' policy renders the "title [to the foreclosed units] unmarketable, or at the very least, adversely affects its marketability."

¶79 Wisconsin Stat. § 703.10(6) prohibits condominium bylaws from affecting the transfer of title to a condominium unit. Wisconsin Stat. § 703.10(6) states: "Title to a condominium unit is not rendered unmarketable or otherwise affected by any provision of the bylaws or by reason of any failure of the bylaws to comply with the provisions of this chapter."

¶80 This provision is "a protection of the title and is not a vehicle for a finding of impairment." Apple Valley, 316 Wis. 2d 85, ¶29 (citing Bankers Tr., 261 Wis. 2d 855, ¶¶18-19) (emphasis added).

¶81 Nevertheless, Walworth State Bank argues that Abbey Springs' recreational use policy affects the quality of the unit's title and its marketability.

¶82 In Apple Valley, we addressed whether a condominium bylaw prohibiting the rental of a condominium unit rendered the unit's title unmarketable. The Apple Valley court determined that although the rental restriction affected the use of the

16

property, it did not affect the owner's ability to convey title. Apple Valley, 316 Wis. 2d 85, ¶28.

¶83 The same is true in the instant case. Although Walworth State Bank presented evidence that Abbey Springs' recreational use policy reduced the market value of the units, it presented no evidence that the restriction affected Walworth State Bank's ability to convey its title.

¶84 Walworth State Bank has not presented any evidence that the unavailability of the recreational facilities, which were not part of the common areas and were available only for an additional cost, rendered the title to the foreclosed units unmarketable.

¶85 Following the foreclosure, Walworth State Bank took title to the units free and clear of "'all right, title, interest, lien or equity of redemption' in and to the property."[32]

¶86 Abbey Springs' recreational use policy simply allows Abbey Springs to exclude an owner from access to Abbey Springs' recreational facilities unless delinquent assessments are paid. It does not affect the owner's ability to convey title.

* * * *

¶87 Because I conclude that Abbey Springs' policy does not violate "well-established foreclosure law" or "effectively revive[] a lien against" the units, and that Walworth State Bank took title to the units following the foreclosure free of "all

---

[32] Majority op., ¶6 (quoting the foreclosure judgment).

17

right, title, interest, lien or equity of redemption" held by Abbey Springs, I would affirm the court of appeals and remand to the circuit court with instructions to grant summary judgment in favor of Abbey Springs.

¶88 For the reasons set forth, I dissent and write separately.

¶89 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.